OPINION
Appellants, Chuck Byers and Byers Home Design, Inc. ("Byers"), appeal from the judgment of the Trumbull County Court, Eastern Division. After a bench trial, the court entered judgment in favor of appellees, Thomas and Beverly Mullen ("Mullen"), on their action for breach of contract and breach of implied warranty of workmanlike construction. Byers built a home for Mullen, completing it in November of 1997. The home subsequently developed water problems in the basement and problems with some roof shingles. The following facts are relevant to a determination of this appeal.
Mullen owned the lot on which the house was to be built. The contracted price for the construction of the home was $112,000. Drought conditions existed in the area for six to eight weeks prior to the beginning of excavation for the basement. Nevertheless, when Byers began the excavation, the excavated area immediately and continuously took on water, indicating a high water table or the presence of an underground spring nearby. Consequently, the excavation had to have water regularly pumped out of it until the internal and external drains were installed and the sump pump connected.
The original building plan for the basement anticipated that the ground, upon which the house was being built, was typical and normal, which is to say, relatively dry. The ground was not typical. It was unusually wet and sandy. Byers believed he could not deviate from the contract price, because he thought that Mullen was "maxed out" financially. Consequently, Byers did not suggest, recommend, or propose any alteration in the construction plan to address the presence of so much water. Byers did make a decision to "hold the house up out of the ground higher than usual." Byers also claimed he ordered double the normal amount of gravel installed, thirty-six inches instead of eighteen as required by the building code. Byers also claimed to have applied a coating of waterproofing cement to the exterior of the cement foundation blocks.
After moving in, Mullen complained to Byers about the basement being wet. Byers sent over an excavator who fixed a crushed drainpipe, but the water problem persisted. Then the basement floor developed a one-quarter inch crack, and a basement wall began to bow. Mullen also noticed that some of the roof shingles began to rise up, an indication that the nails securing them were lifting. Mullen filed suit for breach of contract and breach of implied warranty of workmanlike construction.
At trial, Mullen presented testimony from several witnesses. A landscaper testified that he attempted to dig a drainage ditch for the purpose of draining water away from the house. A general contractor testified regarding the problems with the roof shingles. Two individuals testified for Mullen regarding the home's foundation work. One had twenty years of experience in the basement waterproofing business, the other was a construction cost estimator with thirty years experience in the trade. On behalf of Byers, an excavator, who frequently worked for Byers and who repaired Mullen's drainpipe, testified. Byers also testified.
The trial court found that Byers was aware there was a water problem at the site due to the excessive amount of water present. The court found Byers took no corrective measures to effectively remedy the problem, which was certain to continue. The court found Byers did not properly install the footer drains. The court found Byers failed to properly construct the drainage system generally to insure proper drainage. The court also found Byers did not coat the basement walls to prevent seepage.
With regard to the bowed wall, the court found Byers either improperly constructed the wall or failed to properly back-fill materials along its foundation, thereby causing it to heave and crack. The court found the basement's cement floor was not properly installed, resulting in its cracking. The court found that some of the roof shingles were not installed in a workmanlike manner. The court assessed the following damages: $400 for the cost of the attempt to dig a drainage ditch away from the house; $7,500 for the cost of waterproofing the basement, and fixing the bowed wall and the cracked floor; and $1,000 to repair and re-nail the improperly seated roof shingles. From this judgment, Byers timely filed notice of appeal, assigning the following errors:
 "[1]. The findings of fact and judgment entry in favor of the appellees dated March 27, 2000 is (sic.) against the manifest weight of the evidence and should be reversed.
 "[2]. The trial court's assessment of damages in this matter was against the manifest weight of the evidence.
 "[3]. The court improperly shifted the burden of proof to the appellants to prove that they were not negligent."
 In Byers' first assignment of error, he argues that the trial court's conclusions as to whether the basement, the basement floor, the basement wall, and the roof shingles were installed in a workmanlike manner were against the manifest weight of the evidence.
When an appellate court reviews a civil judgment appealed from on the grounds the judgment is against the manifest weight of evidence, the court of appeals is guided by the presumption that the findings of the trier-of-fact were correct. Seasons Coal Co. v. Cleveland (1984),10 Ohio St.3d 77, 79-80. "Judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence." C.E. Morris Co. v. Foley Construction Co. (1978),54 Ohio St.2d 279, 280.
Byers argues that Mullen failed to put forth evidence establishing the workmanlike standard of care regarding the defects for which Mullen complained. Citing Floyd v. United Home Improvement Ctr. (May 23, 1997), Montgomery App. No. 16250, unreported, 1997 Ohio App. LEXIS 2180, Byers argues that merely establishing the existence of a defect is insufficient without showing that the defect resulted from the contractor's failure to use ordinary care. Byers argues that by failing to establish the standard of care, Mullen could not show that he failed to meet it. While his statement of law is correct, Byers is incorrect in his assertion that Mullen failed to put forth some competent, credible evidence regarding the workmanlike standard of care.
First, we note that the workmanlike standard of care is highly circumstantial, and it depends, among other things, on the inherent condition of the site upon which a structure is built. With respect to a builder's duty to complete a construction project in a workmanlike manner, the Supreme Court of Ohio set forth the following rule:
 "A duty is imposed by law upon a builder-vendor of a real-property structure to construct the same in a workmanlike manner and to employ such care and skill in the choice of materials and work as will be commensurate with the gravity of the risk involved in protecting the structure against faults and hazards, including those inherent in its site. * * *" (Emphasis added.) Mitchem v. Johnson (1966), 7 Ohio St.2d 66, paragraph three of syllabus.
 As Mitchem indicates, the circumstances dictate the standard of care, and the builder must use sufficient skill and care, and utilize the proper materials, to meet the gravity of the risks posed to a structure, including hazards posed which are inherent in the site
of the structure. The measure of a builder's duty is to be determined by establishing the standard of ordinary care and skill under the circumstances presented in the particular situation. Id. at 69.
Mullen presented testimony which established that the site was exceptionally wet. While Byers' own testimony indicated that he did take some measures to address the potential problem, the evidence established that, upon completion, the basement had water problems and that the problems continued. The very presence of excessive water in the basement tends to prove that Byers did not elevate and employ the standard of care commensurate with the situation presented. A properly constructed brand new basement should not have a serious water problem. While, as perFloyd, proof of the existence of a defect standing alone is insufficient, Mullen did present sufficient testimony on the workmanlike standard of care to carry his burden.
Mullen presented two witnesses who testified as to the measures and materials that should have been utilized in order to meet the water hazard inherent in the site. Between the two witnesses, they had a combined fifty years of experience in the field. While their testimony regarding the standard of care was presented in a piecemeal fashion, a thorough review of the transcript indicates that, between the two of them, they did set forth the measures that would be required to build a dry basement under the circumstances. They also indicated several areas where their observations indicated the proper measures were not taken. The weight to be given evidence and the credibility of the witnesses are primarily for the trier of fact to determine. Hollenbeck v. McMahon
(1875), 28 Ohio St. 1, paragraph one of the syllabus. There was competent, credible evidence going to all the essential elements of the claim before the trial court. Likewise, there was competent, credible evidence before the trial court with respect to the other defects. Byers' first assignment of error is without merit.
In Byers' second assignment of error, he argues that the trial court's assessment of damages was against the manifest weight of the evidence. In the case of a breach of a construction contract by the contractor, the proper measure of damages is the reasonable cost of placing the building in the condition contemplated by the parties at the time they entered into the contract. Chess v. Scott (Dec. 23, 1994), Portage App. No. 94-P-0044, unreported, 1994 Ohio App. LEXIS 5907, at *11, citing Jonesv. Honchell (1984), 14 Ohio App.3d 120, 123. "In order to place a building in the condition contemplated by the parties at the time of the contract, `repair of deficient work may involve both additional activities necessitated by the deficient work, and activities previously omitted, but necessary, to proper performance in a workmanlike manner.'"McCray v. Clinton Cty. Home Improvement (1998), 125 Ohio App.3d 521,523-524, quoting Craft Builders v. McCloud (Jan. 14, 1997), Franklin App. No. 96APE05-716, unreported, 1997 Ohio App. LEXIS 107. In new construction cases such as this, the injured party is entitled to recover the full cost of repairing the damage from negligent construction, regardless of whether this amount exceeds the diminution of the market value of the house as a result of the negligent construction. Moore v.McCarty's Heritage, Inc. (1978), 62 Ohio App.2d 89, 91-92.
With respect to the cost of repairing the roof shingles, a contractor testified on Mullen's behalf that it would cost $1,000 to repair the shingles. In contrast, Byers presented testimony that the repairs could be done for $500. The existence of some conflicting testimony does not render Mullen's evidence incompetent or incredible. The weight of the evidence and credibility of the witnesses are primarily for the trier of the fact to determine. With respect to this item, there was competent, credible evidence before the trial court establishing the amount.
With respect to the remedial work done by the landscaper, the trial court found Mullen suffered damages in the amount of $400. Mullen hired the landscaper at his own expense in an attempt to remedy the water problem. So far as the record reveals, this was a good faith effort to resolve the problem. Mullen incurred this expense as a result of the defective construction. In addition to awarding a party the amount necessary to place a property in the condition contemplated by the parties at the inception of a construction contract, a court may award damages for remedial expenses that are incurred as a result of defective construction. Chess, 1994 Ohio App. LEXIS 5907, at *11-12. The award of these damages was appropriate.
Mullen presented the only witness who testified regarding the cost of repairing the defects in the basement. Thus, there was competent, credible evidence before the trial court upon which that portion of the damage award was based. Byers' second assignment of error is without merit.
In Byers' third assignment of error, he argues that the trial court improperly shifted the burden of proof to Byers, forcing him to prove that he was not negligent. This assignment of error is based upon a question posed by the court to Byers at the conclusion of his testimony.
Pursuant to Evid.R. 614(B), a court may interrogate witnesses in an impartial manner, whether called by itself or by a party. The right to question witnesses pursuant to Evid.R. 614(B) rests within the sound discretion of the trial court. State v. Prokos (1993), 91 Ohio App.3d 39,44. Thus, the standard of review on appeal is whether the trial court abused its discretion in eliciting responses from a witness. State v.Davis (1992), 79 Ohio App.3d 450, 454. In Mentor v. Brancatelli (Dec. 5, 1997), Lake App. No. 97-L-011, unreported, 1997 Ohio App. LEXIS 5439, this court stated:
 "`Evid.R. 614(B) permits a trial judge to interrogate a witness as long as the questions are relevant and do not suggest a bias for one side or the other.* * * Absent a showing of bias, prejudice, or prodding of the witness to elicit partisan testimony, it is presumed that the trial court interrogated the witness in an impartial manner in an attempt to ascertain a material fact or develop the truth.* * * A trial court's interrogation of a witness is not deemed partial for purposes of Evid.R. 614(B) merely because the evidence elicited during the questioning is potentially damaging to the defendant.'" (Citations omitted.) Id. at *5-6, quoting State v. Blankenship (1995), 102 Ohio App.3d 534, 548.
 The court asked Byers why, upon discovering the watery condition of the soil, he did not discuss the situation with Mullen and alter the building plan accordingly. Byers responded that he did not think that altering the plan was an option and, therefore, did not discuss the problem with Mullen. Byers argues that by asking this question, the court improperly shifted the burden to him to prove he was not negligent. We disagree. The question posed by the court went directly to the duty imposed on a builder to use such care and skill in the choice of materials and work as is necessary to meet the risk of the hazards a structure is exposed to, including those inherent in the site. This question was not improper, nor did it improperly shift the burden a proof. Byers' third assignment of error is without merit.
The judgment of the trial court is affirmed.
PRESIDING JUDGE WILLIAM M. O'NEILL, CHRISTLEY, J., concurs, GRENDELL, J., concurs in judgment only.