JURGENS REAL ESTATE COMPANY, Appellant,

v.

R.E.D. CONSTRUCTION CORPORATION et al., Appellee.*

R.E.D. CONSTRUCTION CORPORATION, Appellee,

v.

EASTGATE DEVELOPMENT PARTNERSHIP, Appellee, et al.

[Cite as *Jurgens Real Estate Co. v. R.E.D. Constr. Corp.* (1995), 103 Ohio App.3d 292.]

Court of Appeals of Ohio,
Twelfth District, Clermont County.

No. CA93–11–083.

Decided May 8, 1995.

---

*Nichols, Speidel & Nichols* and *Donald W. White,* for appellant Jurgens Real Estate Company.

*Rendigs, Fry, Kiely & Dennis, Leonard A. Weakley, Jr.* and *John M. Hands,* for appellee R.E.D. Construction Corp.

*Freund, Freeze & Arnold, Gordon D. Arnold* and *Thomas Bruns,* for appellee Stanford Joseph.

*Dinsmore & Shohl* and *Gary D. Herfel,* for appellant Eastgate Development Partnership.

———————

KERNS, Judge.

This appeal is from judgments entered by the Clermont County Court of Common Pleas upon the verdicts of a jury in actions claiming damages for the alleged faulty construction of a three-building complex known as Eastgate Commercial Park.

Prior to the construction of the three-building complex, the planned development was divided into three phases for construction purposes, and separate bids were taken for each phase of the project. Subsequently, the bid of R.E.D. Construction Corporation was accepted for all three phases, and separate contracts dated August 4, 1989 were entered into for each phase of the project. At the time, Stanford Joseph was the architect of record who had prepared the plans and specifications for the construction of all three buildings, but he maintained that his contract only required the preparation of permit drawings.

On September 3, 1991, plaintiff, Jurgens Real Estate Company, initiated these proceedings when it filed a complaint against defendants, R.E.D. Construction Corporation and Stanford Joseph, seeking damages relative to the construction of an office warehouse building ("Phase II"), and on April 3, 1992, R.E.D. Construction Corporation commenced an action against Eastgate Development Partnership and Stanford Joseph relative to the construction of an office warehouse

building ("Phase I") and a public storage rental building ("Phase III"). Thereafter, on June 15, 1992, the two cases were consolidated, with various claims and counterclaims being asserted among the various parties to the actions, and the cause came on to be heard by jury on September 14, 1993.

After a lengthy trial, the jury returned its verdict on October 1, 1993. As to Phase I, the jury found against Eastgate upon its claim against R.E.D. and Joseph, and for R.E.D. and against Eastgate in the amount of $19,892. As to Phase II, the jury found against Jurgens upon its claim against R.E.D. and Joseph, and for R.E.D. and against Jurgens in the amount of $121,463. As to Phase III, the jury found in favor of R.E.D. and against Eastgate in the amount of $122,650, and for Eastgate and against R.E.D. and Joseph in the amount of $30,000. Subsequently, posttrial motions filed by Jurgens and Eastgate were overruled, and both have appealed to this court pursuant to a notice of appeal filed on November 29, 1993.

In this court, appellants, Jurgens and Eastgate, have set forth six assignments of error, the first of which has been stated as follows:

"The trial court erred to the prejudice of appellants by refusing to instruct the jury on the issue of appellees' negligence and apportionment of negligence among them."

■ In the trial court, appellants argued that they were entitled to jury instructions on both breach of contract and comparative negligence, whereas appellees argued that their only duties in this case arose from their contractual obligations. Subsequently, the trial court confined its instruction to the law applicable to the contracts entered into by the parties to the actions.

In support of their respective positions, both appellants and appellees have submitted numerous cases, but upon analysis, none of such cases appear to have any more than peripheral application to the particular facts of this case. Here, a strict adherence to the request for a charge on comparative negligence would immediately introduce the possibility of overemphasis and/or double recovery. Moreover, such a charge, in fairness to all, would have to be framed to include the comparative negligence of appellants as well as both appellees. Furthermore, a proper charge on comparative negligence would tend to obscure the rights and duties specifically outlined in the written contracts.

During the proceedings, the trial court also observed that an instruction on contract liability for failure to perform in a workmanlike manner would convey substantially the same message as an instruction upon tort liability for failure to use due care, thus reducing the possibility of any prejudice from the refusal to charge upon both issues.

When this case was orally argued to this court, appellants referred with some particularity to *Cincinnati Riverfront Coliseum, Inc. v. McNulty Co.* (1986), 28 Ohio St.3d 333, 28 OBR 400, 504 N.E.2d 415, but in that case, the resolution of the disputed factual issues was confined solely to the principles of comparative negligence. Likewise, the cases of *Marshall v. Gibson* (1985), 19 Ohio St.3d 10, 19 OBR 8, 482 N.E.2d 583, and *McMillan v. Brune–Harpenau–Torbeck Builders, Inc.* (1983), 8 Ohio St.3d 3, 8 OBR 73, 455 N.E.2d 1276, which were particularly relied upon by appellants, were based solely upon negligence.

In the present case, however, the central theme projected by the evidence revolves almost entirely around breach of contract. In fact, the only duty owed by appellees to appellants is solely traceable to the contracts introduced as exhibits at the trial. While the same evidence may tend to prove a breach of some duty imposed by law as well as the breach of a specific duty imposed by contract, the critical distinction between the two theories was recognized by the Supreme Court of Ohio in *Floor Craft Floor Covering, Inc. v. Parma Community Gen. Hosp. Assn.* (1990), 54 Ohio St.3d 1, 7, 560 N.E.2d 206, 211, as follows:

" 'The law of torts is well equipped to offer redress for losses suffered by reason of a "breach of some duty imposed by law to protect the broad interests of social policy." * * * Tort law is not designed, however, to compensate parties for losses suffered as a result of a breach of duties assumed only by agreement. * * * It remains the particular province of the law of contracts. * * *

" 'The controlling policy consideration underlying tort law is the safety of persons and property—the protection of persons and property from losses resulting from injury. The controlling policy consideration underlying the law of contracts is the protection of expectations bargained for. * * *' " (Citation omitted.) Quoting *Sensenbrenner v. Rust, Orling & Neale* (1988), 236 Va. 419, 425, 374 S.E.2d 55, 58.

During the discussion of this matter in the trial court, appellants candidly stated that the cost of repairs was the only measure of damages in the case, thus admitting that a negligence charge was not indispensable to a complete recovery. And the relationship of all of the parties to the action was based essentially upon contract. If appellees failed to use due care, they simultaneously breached their contracts, and a single instruction upon the theory of contract was most adaptable to the circumstances disclosed by the evidence. Accordingly, the first assignment of error is overruled.

The second assignment of error has been presented as follows:

"The trial court erred to the prejudice of appellants in instructing the jury that R.E.D. Construction Corp. was not responsible for defects in the bricks used in the construction project."

This alleged error is directed to the following language of the court's charge:

"Now, the contract between Jurgens and R.E.D. requires R.E.D. to exercise that degree of care as would an ordinary, prudent contractor under the same or similar circumstances. If R.E.D., in its construction of this project, fell below the standard as set forth in the contract, it would be guilty of a breach of contract.

"R.E.D. is also responsible for the actions of the subcontractors. But it is not just sufficient that R.E.D. fall below the standard of care. Its actions must be the proximate cause of the injuries of Mr. Jurgens and Eastgate.

"Now, proximate cause is a direct causal relationship which continues directly from the wrongful act through the resulting damage and without which cause the damage would not have occurred. Naturally, if something else caused the problem, R.E.D. could not be blamed. Also, R.E.D. cannot be held liable for faulty materials if it did not order them and did use the prescribed amount of care in their construction."

Particularly, appellants contend that the instruction that "R.E.D. cannot be held liable for faulty materials if it did not order them" cannot be reconciled with the provisions of the three contracts which state that "the contractor warrants to owner and architect that materials and equipment furnished under the contract will be of good quality." However, the specifications supplied to R.E.D. by Jurgens and Eastgate dictated the brick to be used, and the record does not show that the subcontractors hired by R.E.D. deviated from the plans and specifications submitted by the owners. In other words, the evidence was susceptible of a reasonable finding that appellants, rather than R.E.D., were responsible for the selection of the defective brick, and the disputed instruction, when placed in context, is not misleading. Manifestly, R.E.D. could not be blamed if something else caused the problem, as observed by the trial court, and the second assignment of error is overruled.

■ The third assignment of error has been submitted as follows:

"The trial court erred to the prejudice of appellants in admitting expert testimony on the issue of delay."

At the trial, R.E.D. was permitted over objection to present the testimony of two expert witnesses, Steven Bieniewicz and John Dowling, on the question of delay during the construction process. Bieniewicz testified as to the cause and effect of the delays, and Dowling testified about the financial aspects of the delays. Both witnesses based their opinions upon a review of file documents, interviews with subcontractors and suppliers, and a review of deposition transcripts.

Ordinarily, a witness may not testify as an expert unless his testimony relates to matters beyond the knowledge or experience possessed by law persons; unless he is qualified as an expert by specialized knowledge, skill, experience, training, or education regarding the subject matter; and unless his testimony is based on reliable scientific, technical or other specialized information. Evid.R. 702. See, also, *State v. Buell* (1986), 22 Ohio St.3d 124, 128–129, 22 OBR 203, 206–208, 489 N.E.2d 795, 800–801; *State v. Koss* (1990), 49 Ohio St.3d 213, 217, 551 N.E.2d 970, 974; *McQueen v. Goldey* (1984), 20 Ohio App.3d 41, 48, 20 OBR 44, 50–51, 484 N.E.2d 712, 720.

In the present case, the issue as to the cause, the fault, and the effect of the delays in the construction project, whether attributable in whole or in part to the owner, the architect, or the contractor, was not a matter which was highly technical, scientific in nature, or beyond the experience or knowledge of the average jury. While both Bieniewicz and Dowling were possessed of impressive resumes, their education and experience transcended the needs of the subject matter in this case.

In support of its position, R.E.D. argues that "experts are routinely utilized to establish and prove the cause and effect of construction delays and the costs incurred as a result of decreased productivity in connection with construction projects," but this court has been referred to no Ohio case where such issues were deemed to be sufficiently unique so as to require expert evidence. Moreover, an examination of the facts of the cases submitted by the appellee from six other jurisdictions discloses only minimal support for the position of R.E.D. under the facts of the present case. Furthermore, and in the absence of unusual circumstances, the issue of delay appears to be beyond the scope of Evid.R. 702.

Here, the opinions of Bieniewicz and Dowling gave undue and unwarranted weight to the testimony of the lay witnesses who testified on behalf of R.E.D. on the issue of delay, and at the same time, such opinions discredited the testimony of the appellants' witnesses on the same issue. Hence, such evidence probably had a material effect upon the issues of fault and damages, and this being the case, the third assignment of error must be sustained.

■ The fourth assignment of error has been alleged as follows:

"The trial court erred to the prejudice of appellants in failing to submit proper interrogatories and verdict form to the jury."

With reference to the alleged error, Civ.R. 49(B) provides as follows:

"The court shall submit written interrogatories to the jury, together with appropriate forms for a general verdict, upon request of any party prior to the commencement of argument. * * * The court shall inform counsel of its proposed action upon the requests prior to their arguments to the jury, but the

interrogatories shall be submitted to the jury in the form that the court approves. * * * "

Following a timely request by a party, "a mandatory duty arises to submit written interrogatories to the jury, provided they are in the form the court approves." *McNulty Co., supra,* 28 Ohio St.3d at 336, 28 OBR at 402, 504 N.E.2d at 418. Unquestionably, the applicable rule reposes discretion in the trial court to pass upon the content of requested interrogatories (*Ragone v. Vitali & Beltrami, Jr., Inc.* [1975], 42 Ohio St.2d 161, 165, 71 O.O.2d 164, 166, 327 N.E.2d 645, 648–649), but such interrogatories may not be summarily disregarded without any consideration, as reflected by the record in the present case. Here, the court did present some interrogatories to the jury, but the record also reveals a blanket disposition of the interrogatories submitted by the various parties to the action.

Noticeably, the appellees do not oppose this assignment of error with much enthusiasm, and this court cannot assuredly say that no prejudice ensued from the failure of the trial court to comply with the requirements of Civ.R. 49(B). Therefore, the fourth assignment of error must be sustained.

The fifth assignment of error has been submitted by the appellants as follows:

"The trial court erred to the prejudice of appellants in failing to provide appellants an opportunity to review the interrogatories and verdict form before closing arguments."

In this regard, Civ.R. 49(B) specifically provides that the trial court shall inform counsel of its proposed action relative to interrogatories prior to their arguments to the jury, but apparently no such action was taken in the present case. Rather, the record discloses the following exchange:

"Mr. White [attorney for plaintiff-appellant]: Your honor, I asked if we could see the proposed charge before the arguments—in particular the interrogatories that will be submitted to the jury. I think all sides of this action have asked that interrogatories be submitted and we really need to be able to see those before we commence argument.

"The Court: Well, the fact of the matter is I don't have a written charge as such; I have a series of notes.

"Mr. White: What about the interrogatories? They have to be in writing obviously.

"The Court: Well, the interrogatories are part of the verdict form, you know, and they are being typed up at the present time.

"Mr. White: Is that something we could see pretty quickly?

"The Court: No, I just gave them to her when I got here. I don't know how long it will take her to get it done, probably by the first recess."

In subsequent exchanges, both the plaintiffs and the defendants expressed some dissatisfaction with the treatment of the interrogatories, as well as with the form of the instructions, but the record fails to reflect any information from the trial court which this court might construe as compliance with Civ.R. 49(B). While many of the interrogatories submitted by Eastgate, Jurgens, and R.E.D. necessarily would have been discarded, the parties should have been realistically informed about the proposed action of the court prior to oral arguments and the court's instructions to the jury. Upon the evidence in this case, the role of interrogatories was important, and the fifth assignment of error is well made.

The sixth assignment of error is based upon the following contention:

"The trial court erred to the prejudice of appellants by entering a judgment that is against the manifest weight of the evidence."

In support of this alleged error, the appellants argue that the walls of two of the buildings leak whenever it rains, and that either Joseph or R.E.D. is necessarily responsible under their contracts for the defects in the buildings. However, Joseph contends that his contract did not include site observations or any of the other duties which a full-service architect might be expected to perform on a construction project of the type undertaken by the owners. And the testimony of the witnesses for R.E.D. places the blame on Jurgens for selecting the cracked brick.

Here, the evidence relates to numerous construction deficiencies and to the responsibility therefor, and many avenues other than the alleged design and construction defects were reasonably opened to the jury. See *C.E. Morris Co. v. Foley Constr. Co.* (1978), 54 Ohio St.2d 279, 8 O.O.3d 261, 376 N.E.2d 578. Admittedly, the verdict may have been influenced to some extent by the testimony of the experts. And the interrogatories and instructions may have been subject to some further refinement. But upon the record presented herein, the judgment is not necessarily against the weight of the evidence, and the sixth assignment of error is overruled.

However, for the reasons set forth herein, the judgment must be reversed and the cause remanded to the common pleas court for further proceedings according to law.

*Judgment reversed*
*and cause remanded.*

KOEHLER, J., concurs.

WILLIAM W. YOUNG, P.J., concurs separately.

JOSEPH D. KERNS, J., retired, of the Second Appellate District, sitting by assignment.

WILLIAM W. YOUNG, Presiding Judge, concurring separately.

After review, I would sustain all six assignments of error and reverse the judgment of the trial court.