FLOYD, Appellant,

v.

UNITED HOME IMPROVEMENT CENTER, INC. et al. Appellees.

[Cite as *Floyd v. United Home Improvement Ctr., Inc.* (1997), 119 Ohio App.3d 716.]

Court of Appeals of Ohio,
Second District, Montgomery County.

No. 16250.

Decided May 23, 1997.

*Jim Rimedio,* for appellant.

*Stephen C. Findley,* for appellee.

BROGAN, Judge.

Appellant Robert L. Floyd appeals from a judgment of the Montgomery County Common Pleas Court's granting a directed verdict in favor of appellee United Home Improvement Center, Inc. ("UHIC").

Floyd advances two assignments of error. First, he contends that the trial court erred by directing a verdict following his case-in-chief despite his presentation of evidence supporting an inference of the appellee's negligence. Next, Floyd argues that the trial court erred by declaring his claims for anxiety, distress, shock, or other mental suffering all "emotional distress" claims.

The present appeal stems from UHIC's construction of a room addition for Floyd's home. While digging a footer trench and crawlspace for the new room, UHIC employees uncovered a four-inch-diameter metal pipe crossing the twelve-foot-wide trench. Dave Marvin, a UHIC representative, testified at trial that a city inspector arrived and instructed UHIC employees to cut the pipe and bury it if they detected no odor. UHIC employees then cut the pipe at approximately 4:00 p.m. on a Thursday, smelled no odor, and observed no fluid flowing from the dry pipe. Marvin also testified that a city inspector observed the cut pipe and approved the pouring of concrete into the trench. Rain moved into the area,

however, and UHIC workers did not pour the concrete on Thursday evening or on Friday.

In contrast to Marvin's testimony, Floyd testified on direct examination that only two construction workers were present when the pipe was cut. He further testified that he was home watching the work and did not see a building inspector examine the severed pipe. On cross-examination, however, UHIC's attorney confronted Floyd with his answers from a pretrial deposition, suggesting that Floyd was uncertain how many people were present and did not know whether a city inspector checked the pipe. After reviewing the deposition testimony, Floyd finally acknowledged that his recollection of the events "possibly" was "much fresher" during the 1993 deposition than it was three years later at trial.

In any event, on a Saturday morning two days after UHIC workers cut the pipe, Floyd smelled what he believed was gas. After checking inside his house, Floyd looked out the back door and saw a "reddish looking fluid" in the trench. Marvin returned to the construction site a couple of days later and also observed the fluid, which was oil, in the trench. The parties subsequently discovered that the severed pipe was attached to an abandoned underground oil tank. Rainwater apparently ran down the pipe and into the tank, filling the tank and forcing oil into the trench. As a result of the oil contaminating Floyd's soil, the U.S. Environmental Protection Agency ordered Floyd's home destroyed and the contaminated soil removed.

Floyd filed a complaint on March 23, 1993, alleging, *inter alia,* that UHIC had breached its duty to perform the work in a professional and workmanlike manner. Floyd also sought recovery for "annoyance and discomfort, severe emotional distress, anxiety, [and] shock to his nervous system." The trial court subsequently granted UHIC summary judgment on Floyd's emotional distress claim. Thereafter, the trial court clarified its ruling and held that "emotional distress" also encompassed Floyd's claims for anxiety, distress, shock or other mental suffering. At Floyd's October 21, 1996, jury trial, the trial court bifurcated the issues of liability and damages. Following Floyd's case-in-chief, however, the court granted UHIC a directed verdict. The trial court based its ruling on Floyd's failure to present any expert testimony concerning how a contractor exercising "ordinary care" would have proceeded under the circumstances confronting UHIC. Specifically, the court found "a lack of expert testimony as to what is the common construction practice and what duty the defendant allegedly breached." Floyd then filed a timely appeal, advancing two assignments of error.

In his first assignment of error, Floyd contends that the trial court erred by directing a verdict in UHIC's favor despite his presentation of evidence permitting the jury to infer negligence. In support of his argument, Floyd first relies upon the doctrine of *res ipsa loquitur.*

■ After reviewing the record, however, we find this argument unpersuasive. Initially, we note that Floyd failed to raise *res ipsa loquitur* before the trial court when responding to UHIC's motion for a directed verdict. UHIC's based its motion upon Floyd's failure to present expert testimony establishing what local contractors would have done when confronted with the situation facing UHIC. In response, Floyd argued only that he did present sufficient expert testimony. Specifically, he interpreted Marvin's testimony as establishing that capping the pipe with concrete would have been appropriate. Floyd's response neither expressly nor implicitly made any reference to *res ipsa loquitur.* Given Floyd's failure to suggest the doctrine, we cannot say that the trial court erred by failing to apply it.

Furthermore, we find *res ipsa loquitur* unnecessary given the facts before us. As Floyd notes, the doctrine applies when (1) the instrumentality causing injury was under the defendant's exclusive control, and (2) the injury ordinarily would not have occurred in the absence of negligence. *Becker v. Lake Cty. Mem. Hosp. W.* (1990), 53 Ohio St.3d 202, 203, 560 N.E.2d 165, 166–167. In recognition of these requirements, Floyd argues that (1) UHIC retained exclusive control of the work site, and (2) the oil would not have flowed into his yard absent UHIC's negligence.

■ In our view, however, the present case does not warrant application of *res ipsa loquitur.* The doctrine applies only when an accident occurs under "unexplained circumstances" and the defendant has exclusive control of the instrumentality causing injury. *Moore v. Ohio Dept. of Rehab. & Corr.* (1993), 89 Ohio App.3d 107, 112, 623 N.E.2d 1214, 1217. By contrast, the present case is not a case of "unexplained circumstances" causing an injury. To the contrary, the evidence plainly demonstrated the oil leak's cause. The parties do not dispute that UHIC cut a pipe and that following a rainstorm the pipe leaked oil into Floyd's yard. Under these circumstances, *res ipsa loquitur* was unnecessary. See *id.* at 112, 623 N.E.2d at 1217. Undisputed evidence demonstrated how the oil leak occurred.

■ The critical issue simply was whether UHIC acted negligently by leaving the severed pipe exposed to the elements rather than capping it immediately. Resolution of this issue depends upon whether, under the circumstances, UHIC fulfilled its duty to perform in a workmanlike manner. It is well settled that once a builder undertakes a construction contract, common law imposes upon him a duty to perform in a workmanlike manner. *Mitchem v. Johnson* (1966), 7 Ohio St.2d 66, 36 O.O.2d 52, 218 N.E.2d 594; *Velotta v. Leo Petronzio Landscaping, Inc.* (1982), 69 Ohio St.2d 376, 23 O.O.3d 346, 433 N.E.2d 147. To prevail on a negligence claim for failure to perform in a workmanlike manner, a plaintiff must "show by a preponderance of the evidence that [the defendant] failed to

exercise ordinary care and skill, and such failure proximately caused the damages." *M.L. Simmons, Inc. v. Bellman Plumbing, Inc.* (July 6, 1995), Cuyahoga App. No. 67832, unreported, 1995 WL 396349, citing *Mitchem, supra; Velotta, supra; McMillan v. Brune–Harpenau–Torbeck Builders, Inc.* (1983), 8 Ohio St.3d 3, 8 OBR 73, 455 N.E.2d 1276.

As we noted above, the trial court directed a verdict for UHIC because Floyd failed to provide expert testimony identifying the "common construction practice" when a builder encounters circumstances like those in the present case. Absent expert testimony stating that UHIC acted improperly, and, in so doing, breached its duty of ordinary care, the trial court found Floyd's case-in-chief insufficient to withstand a directed verdict motion. In support of its ruling, the trial court relied exclusively upon *Ohio Historical Soc. v. Gen. Maintenance & Eng. Co.* (1989), 65 Ohio App.3d 139, 583 N.E.2d 340.

In the portion of *Ohio Historical Soc.* relied upon by the trial court, the Tenth District Court of Appeals stated:

"The duty to perform construction services in a workmanlike manner sounds in tort and is implied by law. *Barton v. Ellis* (1986), 34 Ohio App.3d 251, 518 N.E.2d 18. In order to prevail, OHS must establish that General Maintenance was negligent in that it failed to use ordinary care. *Velotta v. Leo Petronzio Landscaping, Inc.* (1982), 69 Ohio St.2d 376, 23 O.O.3d 346, 433 N.E.2d 147. Merely proving the existence of a defect is insufficient without showing that the defect resulted from the contractor's failure to use ordinary care.

"OHS presented sufficient evidence to show that a defect in the EPDM system existed. However, as the trial court found, OHS solicited no expert testimony concerning the standard of ordinary care to be used in this type of construction. Without showing that General Maintenance did not use ordinary care, OHS has failed to show that General Maintenance was negligent." *Id.* at 147, 583 N.E.2d at 345.

In his brief to this court, Floyd contends that the trial court erred by relying upon *Ohio Historical Soc.* to sustain UHIC's directed verdict motion. Floyd argues that the facts demonstrate UHIC's "obvious departure" from the standard of ordinary care even absent expert testimony on the issue. Conversely, UHIC cites *Ohio Historical Soc.*, and *Schlachter v. Davis* (May 26, 1978), Defiance App. No. 4–77–12, unreported, for the proposition that expert testimony is required to establish what a builder in Montgomery County normally does when finding a four-inch pipe while digging a foundation. Without this testimony, UHIC contends that Floyd could not demonstrate that its conduct fell below the appropriate standard of care, and, therefore, Floyd failed to adduce evidence on an essential element of his claim.

■ After reviewing the record and relevant case law, this court cannot agree that a plaintiff *always* must present expert testimony to prove a builder's deviation from common standards of workmanship or failure to exercise ordinary care. In *Kemper v. Builder's Square* (1996), 109 Ohio App.3d 127, 671 N.E.2d 1104, this court stated:

"Expert testimony, or any testimony at all, for that matter, is not always required to establish a standard of care. Even where not all of the factors involved as to how a standard of care should be exercised are obvious to, or readily understandable by, a lay jury, affirmative evidence of the standard of care is not necessarily required. *Thompson, Admx. v. Ohio Fuel Gas Co.* (1967), 9 Ohio St.2d 116, 117–118, 38 O.O.2d 294, 295–296, 224 N.E.2d 131, 133–135.

"'Except for malpractice cases (against a doctor, dentist, etc.) there is no general rule or policy requiring expert testimony as to the standard of care, and this is true even in the increasingly broad area wherein expert opinion will be received. * * * Courts could very easily expand the area in which expert testimony is required to establish the standard of conduct, but the tendency has been instead to resolve doubtful questions in favor of allowing the jury to decide the issue of negligence without its aid. * * *' *Id.* at 118, 38 O.O.2d at 296, 224 N.E.2d at 134, quoting 2 Harper & James, The Law of Torts (1956), 966, Section 17.1.

"Significantly, the plaintiff's decedent in *Thompson, supra*, was an equipment operator for a county engineer who was killed as a result of an explosion when the blade of a road grader he was operating struck the defendant's gas transmission line. If a lay jury could be expected to determine the proper standard of care in that case without the aid of an expert familiar with the usages and customs of the industry, we see nothing so esoteric in the case before us that would require expert testimony to establish the standard of care.

"Furthermore, evidence of usage and custom, while relevant to the determination of the standard of ordinary care, is not controlling.

"What usually is done may be evidence of what ought to be done, but what ought to be done is fixed by a standard of reasonable prudence, whether it usually is complied with or not. *Texas & Pacific Ry. Co. v. Behymer* (1903), 189 U.S. 468, 470, 23 S.Ct. 622, 623, 47 L.Ed. 905, 906, quoted approvingly in *Thompson, supra.*" *Kemper, supra*, 109 Ohio App.3d at 132–133, 671 N.E.2d at 1107.

Even in legal and medical malpractice cases, where the law typically does require expert testimony to establish the applicable standard of care, exceptions are made when the conduct at issue is within the jury's general experience and

knowledge. See *McInnis v. Hyatt Legal Clinics* (1984), 10 Ohio St.3d 112, 113, 10 OBR 437, 438, 461 N.E.2d 1295, 1296–1297; *Jones v. Hawkes Hosp. of Mt. Carmel* (1964), 175 Ohio St. 503, 506–507, 26 O.O.2d 170, 172–173, 196 N.E.2d 592, 594–595.

Likewise, in two recent construction cases, the Twelfth District Court of Appeals and the Sixth District Court of Appeals have held that expert testimony is unnecessary to sustain a plaintiff's cause of action. In *Sparks v. Martin* (Mar. 3, 1995), Lucas App. No. L–94–129, unreported, 1995 WL 84686, the court rejected an argument that the lower court should have required expert testimony to establish the failure to repair a roof in a workmanlike manner. In that case, the defendant-appellant shingled the plaintiff's house with different colored shingles, and the roof leaked upon completion of the work. Similarly, in *Jurgens Real Estate Co. v. R.E.D. Constr. Corp.* (1995), 103 Ohio App.3d 292, 659 N.E.2d 353, the court found expert testimony unnecessary for the jury to determine "the cause, the fault, and the effect" of delays in a construction project. The court noted that the issue "was not a matter which was highly technical, scientific in nature, or beyond the experience or knowledge of the average jury." *Id.* at 298, 659 N.E.2d at 357.

■ In light of the foregoing authorities, we cannot endorse a *per se* rule requiring expert testimony in workmanlike-construction cases. In the present case, however, we also cannot say that the jury would have known whether a reasonably prudent construction worker should immediately cap an apparently empty pipe rather than leaving it exposed. The record before us reveals no reason for UHIC's workers to have suspected the presence of an abandoned oil tank. In fact, Marvin testified that he never had encountered such a tank. He also testified that four-inch pipes like the one uncovered typically were drainage pipes. Absent some testimony concerning the industry custom *or* some other evidence in the record of circumstances suggesting that a reasonably prudent builder immediately would have capped the pipe (for example, evidence that UHIC knew of the tank's existence), we find Floyd's case-in-chief insufficient to withstand a directed verdict motion.

Civ.R. 50(A)(4) provides for a directed verdict when "the trial court, after construing the evidence most strongly in favor of the party against whom the motion is directed, finds that upon any determinative issue reasonable minds can come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party." Moreover, a directed verdict is proper when the non-moving party fails "to adduce any evidence on the essential elements of his claim." *Bittinger v. Klotzman* (1996), 113 Ohio App.3d 847, 682 N.E.2d 688.

Construing the evidence most strongly in favor of Floyd, we find a directed verdict proper. Floyd has failed to adduce any evidence suggesting that UHIC acted in an unworkmanlike manner and did not exercise ordinary care under the circumstances.[1] The mere occurrence of an injury ordinarily does not create an inference of negligence. *Ferguson v. Cincinnati Gas & Elec. Co.* (1990), 69 Ohio App.3d 460, 464, 590 N.E.2d 1332, 1334. Accordingly, we overrule Floyd's first assignment of error.

In his second assignment of error, Floyd contends that the trial court erred by holding that his emotional distress claim encompassed his claims for anxiety, distress, shock, and other mental suffering. Specifically, Floyd argues that the trial court's grant of summary judgment in favor of UHIC on his emotional distress claim should not have resulted in summary judgment on the other claims.

Our resolution of Floyd's first assignment of error, however, renders this assignment of error moot. Given our holding above that the trial court properly directed a verdict for UHIC on Floyd's negligence claim, Floyd cannot recover for these alleged injuries. Consequently, pursuant to App.R. 12(A)(1)(c), we need not address this assignment of error.

*Judgment affirmed.*

WOLFF and FAIN, JJ., concur.

---

1. In his argument to the trial court, Floyd suggested that Marvin's own testimony demonstrated UHIC's failure to perform in a workmanlike manner. Specifically, he contended that Marvin testified that the pipe would have been capped with concrete if rain had not arrived, indicating that capping was appropriate. The trial transcript does not reveal any testimony from Marvin that he specifically planned to cap the pipe, however. Marvin testified only that after cutting the pipe to determine whether it was abandoned, UHIC workers planned to proceed with their work, which incidentally included pouring a concrete footer. Nothing in Marvin's testimony suggests that the workers intended to pour the concrete as a precaution against drainage from the pipe.