OPINION
{¶ 1} Defendant-appellant Marc W. Lawrence Building Corp. [hereinafter appellant] appeals the Decision of the Stark County Court of Common Pleas that found appellant negligent in the injury of plaintiff-appellee Ron Dramble [hereinafter appellee].
 STATEMENT OF THE FACTS AND CASE {¶ 2} Appellee was the owner and an employee of Dramble Masonry and Concrete, Inc. [hereinafter Dramble Masonry]. Dramble Masonry was serving as the masonry subcontractor at a construction site, at which condominiums were being constructed. Appellant was the general contractor for the project. The Preserve Co. was the owner of the real property and defendant Pat D'Aurelio was The Preserve Co.'s on site employee serving as project manager. Dennis Brown of Brown Carpentry was the carpentry subcontractor.
 {¶ 3} On December 27, 1994, appellee was working at the construction site. Appellee was inspecting the site to determine whether the preliminary work of other subcontractors was complete so that the basement could be completed. Appellee testified that he entered the condominium under construction and went to the basement stairs. Appellee testified that when he took his first step on the stairway, the stairway started to buckle and collapsed. Appellee and the staircase landed in the basement.
 {¶ 4} Two of appellees co-workers, Dale Rine and Darren Dramble (appellee's son), rushed into the condominium after the fall. Appellee was seriously injured as a result of the fall.
 {¶ 5} At trial, there was evidence that the stairs had been attached by only two nails and, as is customary in the construction process, were suspended at the bottom. However, Dennis Brown testified that when he initially installed the stairs, he used 12 to 16 nails to secure the stairs at the top and had incorrectly left the stairs too long. However, Brown testified that upon seeing the stairs prior to the fall, someone had removed the extra length from the stairs.
 {¶ 6} On August 24, 1999, appellee filed a Personal Injury Complaint against appellant, Marc W. Lawrence Construction Corp., The Preserve Co., Pat D'Aurelio and Dennis Brown. Although Dennis Brown was initially named as a defendant, appellee voluntarily dismissed his claim against Brown. Brown subsequently appeared as a witness for appellee.
 {¶ 7} After lengthy discovery, summary judgment motions and procedural issues, including the dismissal and refiling of the case, the matter proceeded to trial on August 20, 2001, through August 23, 2001. On August 24, 2001, the jury returned a verdict in favor of appellee and against appellant and awarded appellee $100,000.00 in compensatory damages. The jury found that the Preserve Co. and Pat D'Aurelio were not liable. Following a Motion for Judgment Notwithstanding the Verdict and a Motion for New Trial, both of which were denied by the trial court, appellant filed a timely Notice of Appeal. Upon appeal, appellant raises the following assignments of error:
 {¶ 8} "I. THE TRIAL COURT ERRED IN FAILING TO GRANT THE MOTION FOR DIRECTED VERDICT IN FAVOR OF THE GENERAL CONTRACTOR WHERE THE GENERAL CONTRACTOR OWED NO DUTY TO AN EMPLOYEE OF A SUBCONTRACTOR.
 {¶ 9} "II. THE TRIAL COURT ERRED IN DENYING THE GENERAL CONTRACTOR'S MOTION FOR JUDGMENT NOTWITHSTANDING THE VERDICT WHERE THE SPECIFIC FINDINGS OF FACT MADE BY THE JURY DETERMINED ALL ISSUES PERTAINING TO THE ABSENCE OF ANY DUTY OWED TO THE EMPLOYEE OF A SUBCONTRACTOR.
 {¶ 10} "III. THE TRIAL COURT ERRED IN FAILING TO INSTRUCT THE JURY ON THE NO DUTY RULE WHERE IT WAS A CORRECT STATEMENT OF THE LAW, ESSENTIAL TO THE JURY'S DELIBERATIONS, AND SUCH AN INSTRUCTION WAS IN FACT PROPOSED BY EACH OF THE PARTIES.
 {¶ 11} "IV. THE TRIAL COURT ERRED IN FAILING TO GRANT THE GENERAL CONTRACTOR'S MOTION FOR DIRECTED VERDICT WHERE THERE WAS NO EVIDENCE THAT IT HAD KNOWLEDGE OF THE ALLEGED DEFECT IN THE STAIRS."
 {¶ 12} "V. THE TRIAL COURT ERRED IN REFUSING TO SUBMIT A PROPOSED JURY INTERROGATORY TO THE JURY WHICH WAS DESIGNED TO TEST THE KNOWLEDGE ELEMENT OF THE FREQUENTER/PREMISES LIABILITY CLAIM.
 {¶ 13} "VI. THE TRIAL COURT ERRED IN ADMITTING HEARSAY TESTIMONY REGARDING ALLEGED CONVERSATIONS RELATING TO THE STAIRS."
 {¶ 14} Additional facts and procedural issues will be discussed within each assignment of error as needed.
 I {¶ 15} In the first assignment of error, appellant contends that the trial court erred when it denied appellant's motion for a directed verdict in favor of appellant. Appellant contends that appellant owed no duty to appellee as the employee of a subcontractor. We disagree.
 {¶ 16} An appellate court applies the same standard to an appeal challenging the propriety of a directed verdict that the trial court applies in the first instance. Sheidler v. Norfolk W. Ry. (1999),132 Ohio App.3d 462, 725 N.E.2d 351. The standard for granting a directed verdict is set out in Civ.R. 50(A)(4): ". . . When a motion for a directed verdict has been properly made, and the trial court, after construing the evidence most strongly in favor of the party against whom the motion is directed, finds that upon any determinative issue reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party, the court shall sustain the motion and direct a verdict for the moving party as to that issue."
 {¶ 17} Although a motion for directed verdict requires a trial court to review and consider the evidence, the motion does not present a question of fact or raise factual issues. Ruta v. Breckenridge-Remy Co. (1982), 69 Ohio St.2d 66, 430 N.E.2d 935, paragraph one of the syllabus. A motion for a directed verdict tests the legal sufficiency of the evidence rather than its weight or the credibility of the witnesses. Id. at 937-938; Eldridge v. Firestone Tire Rubber Co. (1985),24 Ohio App.3d 94, 96, 493 N.E.2d 293, 295. A motion for a directed verdict therefore presents a question of law, and an appellate court conducts a de novo review of the lower court's judgment. Howell v.Dayton Power Light Co. (1995), 102 Ohio App.3d 6, 13, 656 N.E.2d 957,961; Keeton v. Telemedia Co. of S. Ohio (1994), 98 Ohio App.3d 405, 409,648 N.E.2d 856, 858-859.
 {¶ 18} First, the existence of a duty is a question of law for the court to determine. Mussivand v. David (1989), 45 Ohio St.3d 314, 318,544 N.E.2d 265; Mayo v. Habitat For Humanity, Inc. (July 24, 2000), Stark App. No. 1999CA0334, unreported, 2000 WL 1028530. Appellant argues that, as a matter of law, appellant, as the general contractor, owed no duty to appellee, an employee of an independent contractor.
 {¶ 19} Appellant's arguments are primarily based upon Wellman v.East Ohio Gas, Co. (1953), 160 Ohio St. 103, 113 N.E.2d 629, at syllabus and Bond v. Howard Corp. (1995), 72 Ohio St.3d 332, 650 N.E.2d 416. However, as analyzed below, we find that Wellman and Bond are factually distinguishable from the case sub judice.
 {¶ 20} In Wellman, an independent contractor was engaged to lay gas pipe. Wellman was an employee of the independent contractor. As part of the laying of the gas pipe, the pipe was attached to a high-pressure gas main. The independent contractor was aware that gas might enter the pipe past a gate valve and that there was a potential danger which Wellman might encounter. Wellman was injured while working on the pipe.
 {¶ 21} In Wellman, one of the factors considered by the Supreme Court was whether the task undertaken by the independent contractor or its employee had a danger to it that was understood by the independent contractor or its employee and whether that employee then proceeded with the task despite that known risk. The Ohio Supreme Court found that the task being undertaken by the subcontractor and its employee was inherently dangerous and that the danger was known to the independent contractor, through its employees. The Court found that the general contractor was not liable for Wellman's injuries, and the court held as follows:
 {¶ 22} "1. Where an independent contractor undertakes to do work for another in the very doing of which there are elements of real or potential danger and one of such contractor's employees is injured as an incident to the performance of the work, no liability for such injury ordinarily attaches to the one who engaged the services of the independent contractor.
 {¶ 23} "2. One who engages an independent contractor to do work for him ordinarily owes no duty of protection to the employees of such contractor, in connection with the execution of the work, who proceeds therewith knowing and appreciating that there is a condition of danger surrounding its performance." Wellman, supra, at syllabus.
 {¶ 24} The Court distinguished the facts found in Wellman from those factual situations under which a general contractor could be held liable:
 {¶ 25} "Most of the cases cited and relied on . . . involved a situation where an independent contractor and his employees entered upon the premises of the owner or occupier thereof, at his invitation, to perform work for him, unaware and uninformed as to a dangerous condition on the premises created by the owner or of which he had knowledge. In such circumstances, an employee of the independent contractor, who suffers injury by reason of the dangerous condition, may recover damages from the owner for such injury, on the ground that the owner is chargeable with actionable negligence in failing to remove the dangerous condition or to give notice or warning of its existence."
 {¶ 26} Thus, the Court established that the initial determination in such cases was whether the danger was one that a subcontractor was or should have been aware of, ie. was the danger inherent to the work.
 {¶ 27} The Wellman holding, that a general contractor is not liable to employees of an independent contractor when the task being undertaken involves a danger that the independent contractor or its employee was aware of, was recited in Bond v. Howard Corp. (1995),72 Ohio St.3d 332, 336-337, 650 N.E.2d 416. Bond was an employee of an independent subcontractor who was building a wall at a construction site. Bond fell through an unprotected opening in a floor near where he was working. The opening was for a stairwell, but the stairs had not yet been installed. In finding that the general contractor was not liable for Bond's injury, the Ohio Supreme Court restated the law of Wellman and found that Bond was aware of the unprotected opening in the floor before Bond fell through it. Id. at 336.
 {¶ 28} However, appellee argues that the Bond Court established a bright-line rule that any work being performed by a subcontractor's employee on a construction site is inherently dangerous. In Bond, the Court held that a "construction site is inherently a dangerous setting".Bond, 72 Ohio St.3d at 336. In a subsequent case, the Court commented onBond and "noted [that] a subcontractor who works at a construction site is engaged in inherently dangerous work." Michaels v. Ford Motor Co. (1995), 72 Ohio St.3d 475, 650 N.E.2d 1352, at fn. 4.
 {¶ 29} While we acknowledge that the Ohio Supreme Court in Bond
has found that a construction site is inherently dangerous, Bond
continued to indicate that in order for Wellman's "no duty" rule to apply, the independent contractor had to be performing "an inherently dangerous task." Bond, 72 Ohio St.3d at 334. Despite finding that construction sites are inherently dangerous settings, the Court felt a need to find that Bond was aware of the opening in the floor near him and was also aware that no railing had been placed in front of the opening. If the Court had meant to establish a rule that a general contractor cannot be liable for any injury on a construction site, regardless of the subcontractor's or its employees' awareness of the risks, there was no need to find whether the worker was aware of the risk or not. While construction sites are inherently dangerous settings, we find that a court must still determine if the danger or risk faced was inherent to a construction site.
 {¶ 30} We find another case illustrative of this issue. In Lambv. Summit Mall (Jan. 17, 2001), Summit App. No. 20011, 2001 WL 39597, Lamb was injured on a construction site while he was trying to transfer himself from a ladder that was attached to the side of the building to the roof. Lamb was an employee of a subcontractor. The Ninth District Court of Appeals found that "[f]alling from a roof that one is working on, while climbing to the rooftop job site, is one of the inherent hazards of working on a roof." Id. The Lamb Court did not rely on Bond
to find that the worker was automatically engaged in inherently dangerous work because it was a construction site. Rather, the Lamb court looked to the risk Lamb faced and found that it was an inherent danger to the work in which Lamb was engaged.
 {¶ 31} We find that there remains a requirement that the task being conducted had an element of real or potential danger or that the risk faced was inherent to a construction site so that the independent contractor actually or constructively knew of and appreciated the risk but proceeded despite the danger. In this case, we find that appellant's task had no real or potential danger and that the danger appellant faced was not inherent to a construction site.
 {¶ 32} Appellant was not completing a dangerous task, like working with gas lines. Appellant was not engaged in an activity in which he was aware of the danger or the danger was obvious, such as traversing an area with unprotected openings in a floor for a stairwell or climbing from a ladder to a roof. Appellee was simply going down a set of stairs in a condominium that was nearly completed. Workers had been using those stairs previously, without any indication of danger. Appellee was going to the basement to check the progress of work in the basement.
 {¶ 33} Therefore, we find that Wellman and the Wellman line of cases are inapplicable to this case. Thus, appellant was not entitled to a directed verdict based upon Wellman and its progeny.
 {¶ 34} Appellant's first assignment of error is overruled.
 II {¶ 35} In the second assignment of error, appellant argues that the trial court erred when it denied appellant's motion for judgment notwithstanding the verdict since the specific findings of fact made by the jury determined all issues pertaining to the absence of any duty owed to the employee of a subcontractor. Appellant argues that the jury findings show that the jury made all of the required factual findings relevant to the applicability of Wellman, supra. We find appellant's argument fails.
 {¶ 36} Appellant acknowledges that there is a situation in which a general contractor could be liable to employees of an independent contractor. That situation is set forth in Hirschbach v. Cincinnati Gas Elec. Co. (1983), 6 Ohio St.3d 206, 452 N.E.2d 326, syllabus. InHirschbach the Ohio Supreme Court carved out an exception to the general rule set forth in Wellman and held that "[o]ne who engages the services of an independent contractor, and who actually participates in the joboperation performed by such contractor and thereby fails to eliminate a hazard which he, in the exercise of ordinary care, could have eliminated, can be held responsible for the injury or death of an employee of the independent contractor," (Emphasis added). But, appellant argues, in the case sub judice, that the jury did not find actual participation by the appellant. Specifically, the jury found that it was not proven that appellant removed or installed the stairs at any time prior to appellee's accident. The jury also found that appellee did not show that appellant controlled the means and methods of the carpentry subcontractor's work or the masonry subcontractor's work. Appellant, therefore, argues that the "actual participation" exception ofHirschbach was inapplicable to this case, thereby leaving appellant without a duty to appellee, pursuant to Wellman.
 {¶ 37} The standard of review applicable to the denial of a motion for judgment notwithstanding the verdict is identical to motions for a directed verdict. Steppe v. Kmart Stores (1999), 136 Ohio App.3d 454,465, 737 N.E.2d 58 (citing Posin v. A.B.C. Motor Court Hotel, Inc. (1976), 45 Ohio St.2d 271, 344 N.E.2d 334). These motions test the legal sufficiency of the evidence to go to the jury and therefore present a question of law. Grau v. Kleinschmidt (1987), 31 Ohio St.3d 84, 90,509 N.E.2d 399. Therefore, this court's review is de novo. Steppe v.Kmart Stores, supra..
 {¶ 38} Appellant's assignment of error is based upon the assertion that Wellman and it progeny are applicable to this case. Since this court has found that Wellman is not applicable to this case, we find that the trial court did not error when it denied appellant's motion notwithstanding the verdict.
 {¶ 39} Appellant's second assignment of error is overruled.
 III {¶ 40} In the third assignment of error, appellant contends that the trial court erred when it failed to instruct the jury on the Wellman
"no duty" rule. We disagree.
 {¶ 41} Requested jury instructions should ordinarily be given if they are correct statements of law, that are applicable to the facts in the case, and reasonable minds might reach the conclusion sought by the specific instruction. Murphy v. Carrollton Mfg. Co. (1991),61 Ohio St.3d 585, 591, 575 N.E.2d 828. The proper standard of review for an appellate court is whether the trial court's refusal to give a requested jury instruction constituted an abuse of discretion under the facts and circumstances of the case. State v. Wolons (1989),44 Ohio St.3d 64, 68, 541 N.E.2d 443. The term `abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable. Blakemorev. Blakemore (1983), 5 Ohio St.3d 217, 219, 450 N.E.2d 1140.
 {¶ 42} Prior to giving the instructions to the jury, the trial court correctly determined that Wellman, supra, was inapplicable to this case. Therefore, despite the fact that the proposed jury instruction was an accurate statement of law, there was no need to give the instruction since it was inapplicable to the facts of the case. Because we agree with the trial court that Wellman was inapplicable to these facts, we find that the trial court did not abuse its discretion when it failed to give the proposed Wellman based jury instruction.
 {¶ 43} Appellant's third assignment of error is overruled.
 VI {¶ 44} We will consider appellant's sixth assignment of error next. In the sixth assignment of error, appellant contends that the trial court erred when it admitted hearsay in violation of Evid.R. 801(D). Appellant challenges testimony in which in-court witnesses testified that they heard Marc Sullivan say that Marc Lawrence told Pat D'Aurelio to fix the stairs. Appellant contends that there was no foundation laid as to the scope of the employees' job duties to determine whether these statements were within the scope of their employment with Lawrence Building Corp., as required by Evid.R. 801(D)(2)(d).[1]
 {¶ 45} The admission or exclusion of evidence is generally a matter resting within the trial court's sound discretion, and its decision in such matters will not be disturbed on appeal absent an abuse of discretion. State v. Sage (1987), 31 Ohio St.3d 173, 510 N.E.2d 343. An abuse of discretion connotes more than a mere error of law or an error in judgment. It implies an arbitrary, unreasonable, unconscionable attitude on the part of the trial court. Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219, 450 N.E.2d 1140.
 {¶ 46} "`Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Evid.R. 801(C). However, Evid. Rule 801(D)(2) states that a statement is not hearsay if:
 {¶ 47} "Admission by party-opponent. The statement is offered against a party and is . . . (d) a statement by his agent or servant concerning a matter within the scope of his agency or employment, made during the existence of the relationship. . . ."
 {¶ 48} In this case, we have hearsay within hearsay. Hearsay within hearsay is not excluded if each layer of the statement is admissible in and of itself. Evid.R. 805.[2]
 {¶ 49} Witnesses testified at trial that they heard appellant's only carpenter, Mark Sullivan, state that he (Sullivan) had heard Marc Lawrence tell Pat D'Aurelio to get the steps fixed before someone got hurt. Upon appellant's objection, the trial court inquired as to the parties involved and their relationship to appellant. The trial court found that Marc Lawrence was a party to the action and that Mark Sullivan was an agent/employee of appellant. Therefore, the trial court found that the testimony was admissible pursuant to Evid.R. 801(D) and 805.
 {¶ 50} A review of the trial court's comments on the record do not indicate that the trial court openly considered whether the statements by Mark Sullivan and Marc Lawrence concerned a matter within the scope of Sullivan's and Lawrence's employment. However, whether the trial court implicitly found the matter to be within the scope of employment or failed to consider that factor, we find that any error was harmless and that the trial court did not abuse its discretion in admitting the statements. We find that the statements concerned a matter that was within Sullivan's and Lawrence's scope of employment.
 {¶ 51} The original out-of-court statement was allegedly made by Marc Lawrence. Marc Lawrence was president and owner of Marc Lawrence Building Corp., the general contractor for the construction project. Marc Lawrence Building Corp. was a defendant in this matter. As the general contractor at the construction site, there is no question but that the safety and the construction of the condominium was within Lawrence's scope of agency or employment with Marc Lawrence Building Corp. See Evid.R. 801(D)(2).
 {¶ 52} Lawrence's statement was overheard and repeated by Mark Sullivan. Sullivan was appellant's only carpenter and the carpenter who ultimately repaired the stairs after appellee fell. We find that since Mark Sullivan was appellant's sole carpenter and the statement concerned carpentry work, the statement was within Sullivan's scope of employment with appellant.
 {¶ 53} There is evidence to support a finding that the statements were within the employee's agency/scope of employment. We find that the trial court did not abuse its discretion in finding that the challenged statements were admissible pursuant to Evid.R. 805 and 801(D)(2)(d).[3]
 {¶ 54} Appellant's sixth assignment of error is overruled.
 IV {¶ 55} In the fourth assignment of error, appellant claims that the trial court erred when it failed to grant appellant's motion for directed verdict. Appellant argues that even if Wellman is inapplicable and the case is limited to a standard premises liability analysis, appellant was entitled to judgment as a matter of law based upon a lack of any evidence that appellant had knowledge of the defect in the stairs.
 {¶ 56} A motion for a directed verdict is to be granted when construing the evidence most strongly in favor of the party opposing the motion, the trial court finds that reasonable minds could come to only one conclusion and that conclusion is adverse to that party. Civ.R. 50(A). A motion for a directed verdict therefore presents a question of law, and an appellate court conducts a de novo review of the lower court's judgment. Howell v. Dayton Power Light Co. (1995),102 Ohio App.3d 6, 13, 656 N.E.2d 957, 961; Keeton v. Telemedia Co. ofS. Ohio (1994), 98 Ohio App.3d 405, 409, 648 N.E.2d 856, 858-859.
 {¶ 57} Appellant's arguments are based upon the Frequenter Statute, R.C. 4101.11. The Frequenter Statute states the following:
 {¶ 58} "Every employer shall furnish employment which is safe for the employees engaged therein, shall furnish a place of employment which shall be safe for the employees therein and for frequenters thereof, shall furnish and use safety devices and safeguards, shall adopt and use methods and processes, follow and obey orders, and prescribe hours of labor reasonably adequate to render such employment and places of employment safe, and shall do every other thing reasonably necessary to protect the life, health, safety, and welfare of such employees and frequenters." R.C. 4101.11.
 {¶ 59} The Ohio Supreme Court has stated the following in regard to the Frequenter Statute and workplace injuries:
 {¶ 60} "[Pursuant to R.C. 4101.11,] The duty owed to frequenters, i.e., including employees of other companies, is no more than a codification of the common-law duty owed by an owner or occupier of premises to invitees, requiring that the premises be kept in a reasonably safe condition, and that warning be given of dangers of which he has knowledge. See, e.g., Westwood v. Thrifty Boy (1972), 29 Ohio St.2d 84, 58 O.O.2d 154, 278 N.E.2d 673, paragraph one of the syllabus." Eicher v. U.S. Steel Corp. (1987), 32 Ohio St.3d 248, 249, 512 N.E.2d 1165.
 {¶ 61} Stated otherwise, "the owner or occupier of premises [owes a duty] to business invitees to keep his premises in a reasonably safe condition and to give warnings of latent or concealed perils of which he has, or should have, knowledge." Westwood v. Thrifty Boy Super Markets,Inc. (1972), 29 Ohio St.2d 84, 87, 278 N.E.2d 673 (citing Debie v.Cochran Pharmacy-Berwick (1967), 11 Ohio St.2d 38, 42, 227 N.E.2d 603;Sidle v. Humphrey (1968), 13 Ohio St.2d 45, 233 N.E.2d 589; Holdshoe v.Whinery (1968), 14 Ohio St.2d 134, 237 N.E.2d 127).
 {¶ 62} Both parties agree that appellee was an invitee. Therefore, appellant had a duty to warn appellee of latent or concealed hazards or defects appellant knew of or should have known of. However, appellant claims there was no evidence to show that appellant knew or should have known of the defect in the stairs.
 {¶ 63} We agree with the trial court that when the evidence is viewed most strongly in favor of appellee there was sufficient evidence to support appellee's claim that appellant had or should have had knowledge of a defect in the stairs. Marc Lawrence testified that appellant's carpenter, Mark Sullivan, told him that there was only one nail holding the staircase up on either side (for 2 nails total). Darren Dramble testified that the day after the accident, Sullivan stated that "the reason that [appellee] fell was because there was only one nail on either side of the staircase." Transcript of Proceedings, Vol. 2, pgs. 167-170. Dramble also testified that Sullivan or Frank Hamilton, a laborer for appellant, stated that "Pat was supposed to have the stairs fixed." Transcript of Proceedings, Vol. 2, pgs. 170-171. Further, Dale Rine, who worked for Dramble Masonry, testified that on the day after appellee's fall, he heard Mark Sullivan state the reason appellee fell was because the stairs needed to be fixed and that Marc Lawrence had told Pat D'Aurelio "to fix the stairs before someone fell down and got hurt." Transcript of Proceedings, Vol. 2, pg. 200. The jury could have understood Rine's testimony to imply that the instruction to fix the stairs was given before Ron Dramble fell. Therefore, it is evidence that Lawrence knew there was a dangerous condition before Dramble fell.
 {¶ 64} Lastly, Dennis Brown, the rough carpenter, testified that he had installed the stairs, using 12 to 16 nails. The stairs that Brown installed had an extra tread. Brown came back with a crew of workers to pull the steps out, cut off the extra tread and reinstall the steps prior to appellee's fall. However, Brown found that someone else had cut off the extra tread and left it lying in the basement.
 {¶ 65} When the evidence is construed in a light most strongly in favor of the party opposing the motion (appellee), there was sufficient evidence to support appellee's claim. Reasonable minds could come to a conclusion in favor of appellee. Therefore, the trial court did not error when it denied appellant's motion for a directed verdict.
 {¶ 66} Appellant's fourth assignment of error is overruled.
 V {¶ 67} In the fifth assignment of error, appellant argues that the trial court erred when it refused to submit proposed written interrogatories to the jury. We disagree.
 {¶ 68} Civil Rule 49(B) addresses written interrogatories: "The court shall submit written interrogatories to the jury, together with appropriate forms for a general verdict, upon request of any party prior to the commencement of argument. Counsel shall submit the proposed interrogatories to the court and to opposing counsel at such time. The court shall inform counsel of its proposed action upon the requests prior to their arguments to the jury, but the interrogatories shall be submitted to the jury in the form that the court approves. The interrogatories may be directed to one or more determinative issues whether issues of fact or mixed issues of fact and law."
 {¶ 69} Thus, Civ.R. 49(B) creates a mandatory duty following a timely request by a party, to submit written interrogatories to the jury, provided they are in a form of which the court approves. JurgensReal Estate Company v. R.E.D. Construction Corp. (1995),103 Ohio App.3d 292, 299, 659 N.E.2d 353. The rule, therefore, reposes discretion in the court to pass upon the content of requested interrogatories. Riley v. Cincinnati (1976), 46 Ohio St.2d 287, 298,348 N.E.2d 135 (citing Ragone v. Vitali Beltrami, Jr., Inc. (1975),42 Ohio St.2d 161, 327 N.E.2d 645). Specifically, the Ohio Supreme Court has held that a trial court has discretion to reject proposed jury instructions which are ambiguous, redundant or legally objectionable.Ziegler v. Wendel Poultry Serv. Inc. (1993), 67 Ohio St.3d 10, 15,615 N.E.2d 1022, overruled on other grounds, Fidelholtz v. Peller
(1998), 81 Ohio St.3d 197, 690 N.E.2d 502. Thus, a trial court's decision not to submit proposed interrogatories to a jury will be reversed only on a showing of an abuse of discretion. Freeman v. Norfolk W. Ry. Co. (1994), 69 Ohio St.3d 611, 614, 635 N.E.2d 310. An abuse of discretion is more than an error of judgment, but instead demonstrates "perversity of will, passion, prejudice, partiality, or moral delinquency." Pons v.Ohio State Med. Bd. (1993), 66 Ohio St.3d 619, 621, 614 N.E.2d 748. When applying the abuse of discretion standard, an appellate court may not substitute its judgment for that of the trial court. Id.
 {¶ 70} Proper interrogatories are those that will lead to "findings of such a character as will test the correctness of the general verdict returned and enable the court to determine as a matter of law whether such verdict will stand." Freeman, supra (citing Bradley v.Mansfield Rapid Transit, Inc. (1950), 154 Ohio St. 154, 160,93 N.E.2d 672). The Ohio Supreme Court has held that a trial court should refuse to submit interrogatories that are improper in form or content. Freeman, 69 Ohio St.3d at 614.
 {¶ 71} Civil Rule 49 places the burden on the parties themselves to propose proper interrogatories. Civ.R. 49(B); Freeman, supra. "Although the interests of justice and efficiency may make it a wise course of action, Civ.R. 49 does not obligate a trial court to assist a party in reformulating improper interrogatories." Freeman,69 Ohio St.3d at 614. The trial court's duty is to submit proper interrogatories and to reject interrogatories only for proper reason. Id. (citing CincinnatiRiverfront Coliseum, Inc. v. McNulty, Co. (1986), 28 Ohio St.3d 333,336, 504 N.E.2d 415).
 {¶ 72} Appellant argues that the trial court rejected certain interrogatories because the trial court erroneously found them to be untimely. Appellee responds that the interrogatories included incorrect statements of law, and concludes that the trial court did not abuse its discretion in refusing to submit the interrogatories to the jury.
 {¶ 73} The trial court did impose a deadline for the submission of interrogatories that was earlier than that imposed by Civ.R. 49(B). However, the transcript of proceedings indicates that the trial court did not reject the proposed interrogatories solely because they were filed after the deadline imposed by the trial court. The trial court also found that the interrogatories required a re-write in order to be presentable to the jury. We find that the trial court did not abuse its discretion.
 {¶ 74} Appellant presents arguments regarding only the two following proposed interrogatories:
 {¶ 75} "Proposed Interrogatory No. 3: `If your answer to question no. 1 is "YES," did Marc Lawrence Building Corp. have knowledge that the basement stairs were defective or in the exercise of ordinary care, could it have discovered that the basement stairs were defective?'" (Emphasis added.)
 {¶ 76} Proposed Interrogatory No. 4: "If your answer to question no. 3 is "YES," state the evidence upon which you rely in determining that Marc Lawrence Building Corp. either had knowledge that the basement stairs were defective or in the exercise of ordinary care, could have discovered that the basement stairs were defective."
 {¶ 77} Technically, the proposed interrogatories were not untimely, pursuant to Civ.R. 49(B). The proposed interrogatories were submitted to the trial court prior to the commencement of argument. Therefore, it would have been error for the trial court to have summarily rejected the interrogatories as untimely, without a review of the form and content of the interrogatories. Cincinnati Riverfront Coliseum,Inc., v. McNulty, Co., supra.
 {¶ 78} However, in rejecting the proposed interrogatories, the trial court noted that the rejected interrogatories required a rewrite. A review of the challenged interrogatories reveals that the challenged interrogatories were not based on an accurate statement of law. The general rule of law with respect to the duty owed to an invitee such as appellee is the duty of ordinary care. Ordinary care includes the duty to maintain the premises in a reasonably safe condition and to warn the invitee of a latent or concealed defect of which the owner had or shouldhave had knowledge. R.C. 4101.11; Westwood v. Thrifty Boy Super Markets,Inc. (1972), 29 Ohio St.2d 84, 278 N.E.2d 673; Sidle v. Humphrey (1968),13 Ohio St.2d 45, 233 N.E.2d 589. However, appellant's proposed interrogatory No. 3 expresses this duty in term's of whether the defectcould have been discovered. There is a difference between whether a party could have discovered the defect and whether a party should have had knowledge of the defect. Appellant's interrogatory incorrectly defined a premises owner or occupant's responsibility. Thus, the trial court should have refused to submit interrogatory No. 3 to the jury. We find no abuse of discretion in rejecting the interrogatory and refusing to submit it to the jury. Since proposed interrogatory No. 4 was dependent upon the answer to proposed interrogatory No. 3, we find that the trial court did not abuse its discretion in not submitting proposed interrogatory No. 4 to the jury.
 {¶ 79} Having said that, however, this court expresses its concern that the trial court's statement of its reasons for rejecting the proposed interrogatories placed some emphasis on the fact that the interrogatories were submitted late in the proceedings. We recognize that the proposed interrogatories could have easily been corrected and were of great importance to appellant's case, but appellant did not request an opportunity to revise the interrogatories. And, as stated previously, a trial court has no obligation to assist a party in the reformulation of an interrogatory. Freeman, supra. Therefore, for the reasons stated previously, this court concludes that the trial court did not abuse its discretion in
 {¶ 80} rejecting the proposed interrogatories.
 {¶ 81} Appellant's fifth assignment of error is overruled.
 {¶ 82} The judgment of the Sark County Court of Common Pleas is affirmed.
By Edwards, J., Gwin, P.J. and Wise, J. concur.
Topic: General Contractor Liability — Premises Liability — Hearsay
[1] Appellant raised no error regarding the other elements required by Evid.R. 801(D)(2)(d).
[2] "Hearsay included within hearsay is not excluded under the hearsay rule if each part of the combined statements conforms with an exception to the hearsay rule provided in these rules." Evid.R. 805.
[3] Appellant raised no error regarding the other elements required by Evid.R. 801(D)(2)(d).