HORTMAN et al., Appellants,

v.

CITY OF MIAMISBURG et al., Appellees.

[Cite as *Hortman v. Miamisburg*, 161 Ohio App.3d 559, 2005-Ohio-2862.]

Court of Appeals of Ohio,
Second District, Montgomery County.

No. 20664.

Decided June 10, 2005.

560

Patrick J. Conboy II, for appellants.

Robert J. Surdyk and Rebekah S. Neuherz, for appellee city of Miamisburg.

Charles F. Shane, for appellee SK Construction Company.

Wolff, Judge.

{¶ 1} Douglas Hortman and David Hortman appeal from a judgment of the Montgomery County Court of Common Pleas, which granted summary judgment in favor of the city of Miamisburg and partial summary judgment in favor of SK Construction Company on the Hortmans' claims arising out of the Maue Road Improvement Project III.

{¶ 2} The facts giving rise to this litigation were set forth by the trial court as follows.

{¶ 3} "This action concerns the property at 502 South Linden Avenue in Miamisburg, located at the corner of Maue Road and Linden Avenue. The property was purchased by Donald Hortman in 1972. Between 1972 and 2000, only a few minor improvements were made to the property.

{¶ 4} "In 2000, Donald Hortman and his two sons, David and Douglas Hortman, attended public meetings concerning the Maue Road Improvement Project—Phase III. The Hortman[s] did not object to the improvements. Donald Hortman died in February 2001, shortly before work began. At that time, Douglas and David Hortman became joint owners of the property. When work began in March 2001, Douglas signed a Work Permission Agreement. This agreement specifically authorized Miamisburg to enter [the] property for the purpose of performing all necessary work to adjust ground elevation, water service, and tree and brush removal in accordance with the plans for the improvement. Miamisburg contracted with SK Construction Company ("SK") to perform all the necessary work for the improvement.

{¶ 5} "As a result of the construction, Plaintiffs claim that they suffered damage to both personal and real property. Plaintiffs allege that the personal property damaged consisted of two Persian rugs and family photos. As for the real property damaged, Plaintiff[s] first allege damage to the swimming pool, because the pool and surrounding concrete were cracked due to the vibrations of construction equipment used by SK, and that the pool is not as secure due to removal of dirt due to excavation performed by SK. Plaintiff[s] also allege damage to the front porch due to the vibrations.

{¶ 6} "Finally, Plaintiff[s] complain of the loss of certain trees. Plaintiff[s] allege that during the meetings they attended prior to the improvements, several City officials promised that certain trees on the Hortman property would not be touched or destroyed. These trees included an elm tree and other trees on the Linden Avenue side of the property, and a pine tree on the Maue Road side. During the course of the excavation for the project, the roots of the elm were exposed, and the tree was destroyed. Several pine trees, including the one on the Maue Road side, were also taken down. It should be noted that the project

design clearly indicated the public right of way and scope of the work area, and that some of those trees, including the elm, were located in that area and subject for removal. The City paid to relandscape the property. However, Plaintiff[s] filed this suit against the City and SK for negligence in construction, conversion, and promissory estoppel, and have prayed for punitive damages for negligent, reckless, or wanton disregard for Plaintiff[s'] rights."

{¶ 7} SK and the city sought summary judgment on the claims against them. On July 21, 2004, the trial court granted the city's motion on sovereign-immunity grounds. The court concluded that R.C. 2744.02(A) provided immunity for each of the Hortmans' claims and that none of the exceptions to that immunity under R.C. 2744.02(B)(3) applied. In a separate decision filed on the same day, the trial court granted SK's motion for summary judgment on the Hortmans' conversion and promissory estoppel claims and on their claim that SK was negligent in causing vibrations that damaged the Hortmans' house. The court denied SK's motion with respect to Hortman's negligence claims concerning the removal of the old gas pipe and the building of the retaining wall. On July 28, 2004, the court certified that the summary judgment rulings were immediately appealable, pursuant to Civ.R. 54(B).

{¶ 8} The Hortmans raise two assignments of error on appeal.

"The trial court erred in sustaining defendant/appellee the city of Miamisburg's motion for summary judgment."

{¶ 9} In their first assignment of error, the Hortmans claim that the trial court incorrectly concluded that the promissory estoppel claim was precluded by R.C. 2744.02(A) and that none of the exceptions to the sovereign immunity statute applied to any of their claims.

{¶ 10} In granting summary judgment to the city on the promissory estoppel claim, the trial court concluded that the claim was not viable because the city was performing a governmental function and the Hortmans had failed to present evidence that the person who had made the promise had the authority to waive the city's right to the right of way. The Hortmans assert that, pursuant to R.C. 2744.09(A), their promissory estoppel claim is not covered by the Political Subdivision Tort Liability Act, codified at R.C. Chapter 2744. R.C. 2744.09(A) provides that political subdivisions are not immune from actions seeking damages "for contractual liability."

{¶ 11} In general, "the principle of estoppel does not apply against a state or its agencies in the exercise of a governmental function." *Ohio State Bd. of Pharmacy v. Frantz* (1990), 51 Ohio St.3d 143, 145–46, 555 N.E.2d 630. However, "[i]t has been held that estoppel is applicable to municipalities in contract situations so long as the subject matter of the contract is not illegal or

ultra vires. While estoppel is to be sparingly invoked, it is applicable if the municipality made a representation which was within its power to make, and this action induced the plaintiff's reliance." (Citations omitted.) *State v. First, Inc.* (Apr. 3, 1990), Montgomery App. No. 11486, 1990 WL 40668. Thus, we have held that promissory estoppel is available in the contractual context, even when the government is performing a governmental function, "where the subject matter of the contract is within the authority of the person acting on behalf of the [s]tate." Id.; see, also, *Pilot Oil Corp. v. Ohio Dept. of Transp.* (1995), 102 Ohio App.3d 278, 283, 656 N.E.2d 1379; *Oxford v. Day* (Mar. 16, 1998), Butler App. No. CA96–09–183, 1998 WL 117167. We explained:

{¶ 12} "Federal courts have long recognized that if estoppel were not available against the United States in contract disputes, it would give government negotiators an unfair advantage to lay traps for unsuspecting business people. The realities of modern society require that governments enter into contracts with private individuals. In order for this relationship to operate efficiently, it is necessary that the business community know that government 'plays by the same rules' of contract law as does everyone else. So long as the subject matter of the contract is within the scope of the agency's authority, the application of traditional contract law does not impinge upon the government's sovereignty. It is this rationale that has traditionally allowed the application of estoppel to the state when performing a proprietary function. Unlike in the past, however, modern states must sometimes contract with private entities to carry out even governmental functions." (Citations omitted.) *First*, supra. Accordingly, the trial court incorrectly stated that the Hortmans' promissory estoppel claim was precluded merely because the city was performing a governmental function, and we see no basis for precluding estoppel under the present circumstances.

{¶ 13} The city argues that even if it were not immune from the promissory estoppel claim, the Hortmans cannot demonstrate reliance upon the alleged promises not to touch or destroy certain trees on the Linden side of the property, because the promises were made to their father. The city asserts that it was neither reasonable nor foreseeable that the Hortmans would rely upon promises to their father with respect to property that they did not own or live in. The city further contends that the Hortmans have presented no evidence of detrimental reliance. It notes that, because the trees were within the city's permanent right of way, the city had the right to remove those trees.

{¶ 14} To establish a claim of promissory estoppel, a plaintiff must prove "(1) a clear, unambiguous promise; (2) reliance upon the promise by the person to whom the promise is made; (3) the reliance is reasonable and foreseeable; and (4) the person claiming reliance is injured as a result of reliance on the promise." *Weiper v. W.A. Hill & Assoc.* (1995), 104 Ohio App.3d 250, 260, 661 N.E.2d 796,

citing *Healey v. Republic Powdered Metals, Inc.* (1992), 85 Ohio App.3d 281, 284–285, 619 N.E.2d 1035.

■ {¶ 15} Upon review of the record, we agree with the Hortmans that they have created a genuine issue of material fact on each element of their claim. Doug Hortman testified in his deposition that he had attended public meetings concerning the Maue Road project with his father, who was the owner of the property at that time. The Hortmans stated that Robert Stanley, the city engineer, and Robert Faulkner, a city councilman, had promised that certain trees would not be touched or destroyed. Doug Hortman further indicated that "[b]ased on the verbal conversations and the verbal contract that we had with the city of what was going to be done," they signed the Work Permission Agreement. He indicated that he would have contacted an attorney and fought the improvement project if the promises had not been made. Although the plaintiffs have not demonstrated that Faulker had any authority regarding the work to be done, Stanley testified that he oversaw the design and the construction of the Maue Road Improvement Project and dealt with the local residents. Stanley indicated that he had responsibility for accepting the work. In our judgment, based on this evidence, the city was not entitled to summary judgment on the Hortmans' promissory estoppel claim.

■ {¶ 16} It is undisputed that the Political Subdivision Tort Liability Act applies to the Hortmans' negligence and conversion claims. The act requires a three-tiered analysis to determine whether a political subdivision should be immune from liability. Pursuant to R.C. 2744.02(A)(1), the general rule is that political subdivisions are not liable in damages when performing either a governmental or a proprietary function. *Hubbard v. Canton City Bd. of Edn.*, 97 Ohio St.3d 451, 2002-Ohio-6718, 780 N.E.2d 543. Once immunity is established, the second tier of the analysis is whether one of the exceptions to immunity set forth at R.C. 2744.02(B)(1) through (5) applies. Third, immunity can be reinstated if the political subdivision can successfully show that one of the defenses contained in R.C. 2744.03 applies.

{¶ 17} The Hortmans concede that R.C. 2744.02(A)(1) applies to their conversion and negligence claims. They claim, however, that the city is not immune, pursuant to R.C. 2744.02(B)(2), because the building of the wall and the destruction of trees were proprietary functions. The Hortmans rely upon *Greene Cty. Agricultural Soc. v. Liming* (2000), 89 Ohio St.3d 551, 733 N.E.2d 1141, in which the Supreme Court of Ohio concluded that the conducting of a hog show at a county fair by a county agricultural society was a proprietary function. The state responds that we previously rejected the Hortmans' argument in *Shank v. Springfield* (May 3, 1995), Clark App. No. 94–CA–71, 1995 WL 259188.

{¶ 18} The maintenance and repair of roads, highways, streets, and avenues is a governmental function as defined in R.C. 2744.01(C)(2)(e). R.C. 2744.01(G)(1) defines a proprietary function as one that is specified in R.C. 2744.01(G)(2) or that satisfies both of the following: "(a) The function is not one described in division (C)(1)(a) or (b) of this section and is not one specified in division (C)(2) of this section" and "(b) The function is one that promotes or preserves the public peace, health, safety, or welfare and that involves activities that are customarily engaged in by nongovernmental persons."

{¶ 19} In *Shank,* Clark App. No. 94–CA–71, 1995 WL 259188, we rejected the plaintiffs' contention that the construction of driveway aprons by the city of Springfield was a proprietary function because it was an act that is normally performed by a nongovernmental person. We reasoned: "Although it may be true that the construction of a driveway apron is an activity that is customarily engaged in by non-governmental persons, in this case the driveway aprons were constructed as part of the Columbus Avenue maintenance and reconstruction project and were, therefore, constructed by the City pursuant to the performance of its governmental function."

{¶ 20} We find *Shank* to be instructive. In the present case, it is undisputed that the building of the wall and the removal of the trees were performed as part of the Maue Road Improvement Project III. Although such activities are often performed by nongovernmental persons, they cannot be divorced from the underlying governmental function, i.e., the repair and maintenance of Maue Road. In this respect, the present circumstances are distinguishable from *Liming,* where the livestock competition was neither a "central core function" of the county agricultural society nor essential to the county fair. Accordingly, the trial court properly concluded that the exception to immunity set forth in R.C. 2744.02(B)(2) was inapplicable to the Hortmans' claims for negligence concerning the construction of the wall and for conversion regarding the destruction of the trees.

{¶ 21} The first assignment of error is overruled in part and sustained in part.

{¶ 22} "The trial court erred in sustaining defendant/appellee SK Construction Company's motion for summary judgment in part."

{¶ 23} In their second assignment of error, the Hortmans claim that the trial court improperly granted summary judgment to SK on their claim that SK had negligently caused vibrations that damaged the Hortmans' house.

{¶ 24} "It is well settled that once a builder undertakes a construction contract, common law imposes upon him a duty to perform in a workmanlike manner. To prevail on a negligence claim for failure to perform in a workmanlike manner, a plaintiff must 'show by a preponderance of the evidence that [the

defendant] failed to exercise ordinary care and skill, and such failure proximately caused the damages.' " *Floyd v. United Home Imp. Ctr., Inc.* (1997), 119 Ohio App.3d 716, 719–720, 696 N.E.2d 254.

{¶ 25} The Hortmans provided substantial evidence that SK's use of equipment in connection with the Maue Road Project caused severe vibrations. Douglas Hortman testified that as a result of the vibrations, two cracks appeared in the front porch and eight cracks appeared in the sidewalk surrounding the pool on the Maue Road side of the property. The Hortmans have provided evidence that SK's actions caused damage to their property.

{¶ 26} The critical issue then is simply whether SK's performance of the Maue Road project was negligent. The Hortmans argue that the city did not instruct SK on how to accomplish the project and that SK should have taken more care to limit the property's exposure to the continuous vibrations caused by the construction equipment. The Hortmans cite evidence that SK ignored Doug Hortman when he explained that his property was shaking and that cracks were appearing in the porch and pool sidewalk. However, Doug Hortman acknowledged during his deposition that SK did not use its equipment in a negligent manner and did not conduct any activities outside of the specifications and directives from the city. Jerry Pence, superintendent for SK during the project, likewise stated that SK performed its obligations in strict accordance with the city's plans, specifications, or directives, and that the city's plans "were not so obviously dangerous and/or defective so that a reasonable person would not follow them." Viewing the evidence in the light most favorable to the Hortmans, the Hortmans have failed to present evidence that SK had acted negligently.

{¶ 27} The second assignment of error is overruled.

{¶ 28} The judgment granting partial summary judgment to SK Construction is affirmed.

{¶ 29} The judgment granting summary judgment to the city of Miamisburg is affirmed in part and reversed in part.

{¶ 30} The captioned cause is remanded for further proceedings.

> Judgment affirmed in part
> and reversed in part,
> and cause remanded.

BROGAN, P.J., and YOUNG, J., concur.

FREDERICK N. YOUNG, J., sitting by assignment of the Chief Justice of the Supreme Court of Ohio.