OPINION
{¶ 1} Appellant GGJ, Inc. ("GGJ") appeals the decision of the Court of Common Pleas, Tuscarawas County, which granted a directed verdict in favor of Appellee Tuscarawas County Board of Commissioners, in a suit by GGJ for recovery of engineering fees on a theory of promissory estoppel. The relevant facts leading to this appeal are as follows.
 {¶ 2} GGJ is an engineering firm which provides consulting and design services, including water and wastewater systems and infrastructure design, for the public sector. In early 2002, the Tuscarawas County Port Authority ("Port Authority") retained GGJ as the consulting engineer for a resort and conference center project in Sugarcreek, Ohio, known as the "Mines Resort Project." GGJ and the Port Authority entered into a written contract for these purposes in November 2002.
 {¶ 3} In December 2002, the Commissioners voted 2 to 1 to guarantee the bonds for the Mines Resort Project, with Commissioner Seldenright casting the vote against said guarantee. The underwriting investment entities thereafter apparently deemed the potential bonds unmarketable, and the project came to an end.
 {¶ 4} It is undisputed that GGJ never had a written contract with Appellee Tuscarawas County Board of Commissioners ("Commissioners"). However, GGJ claimed that as a result of the representations and assurances allegedly made by the Commissioners, it provided approximately $125,000 in engineering and design services in furtherance of the Mines Resort Project.
 {¶ 5} On September 3, 2003, GGJ filed its complaint against the Port Authority in the Tuscarawas County Court of Common Pleas. On March 3, 2004, GGJ filed an amended complaint adding the Commissioners as a defendant, and adding a claim against the Commissioners for promissory estoppel. On September 23, 2004, GGJ dismissed its claims against the Port Authority.
 {¶ 6} The matter proceeded to a jury trial on June 28, 2005. Upon the conclusion of the presentation of evidence, the trial court granted a directed verdict and dismissed GGJ's complaint. Judgment was thereby entered in favor of the Commissioners.
 {¶ 7} GGJ filed a notice of appeal on July 1, 2005. It herein raises the following sole Assignment of Error:
 {¶ 8} "I. THE TRIAL COURT ERRED IN GRANTING A DIRECTED VERDICT BY FAILING TO CONSTRUE EVIDENCE MOST STRONGLY IN FAVOR OF PLAINTIFF AND DESPITE THE EXISTENCE OF PROBATIVE EVIDENCE WHICH WOULD PERMIT REASONABLE MINES [SIC] TO COME TO DIFFERENCE [SIC] CONCLUSIONS.
 I. {¶ 9} In its sole Assignment of Error, GGJ contends the trial court erred in granting a directed verdict in favor of the Commissioners. We disagree.
 {¶ 10} The standard of review for the grant or denial of a motion for a directed verdict is whether there is probative evidence which, if believed, would permit reasonable minds to come to different conclusions as to the essential elements of the case, construing the evidence most strongly in favor of the non-movant. Brown v. Guarantee Title Trust/Arta (Aug. 28, 1996), Fairfield App. No. 94-41, citing Sanek v. Duracote Corp.
(1989), 43 Ohio St.3d 169, 172, 539 N.E.2d 1114. A motion for a directed verdict therefore presents a question of law, and an appellate court conducts a de novo review of the lower court's judgment. Howell v. Dayton Power Light Co. (1995),102 Ohio App.3d 6, 13, 656 N.E.2d 957, 961.
 {¶ 11} Promissory estoppel, the specific issue raised in the present assigned error, is an equitable doctrine for preventing the harm resulting from reasonable reliance upon false representations. See Karnes v. Doctors Hosp. (1990),51 Ohio St.3d 139, 142, 555 N.E.2d 280. In general, "the principle of estoppel does not apply against a state or its agencies in the exercise of a governmental function." Hortman v. Miamisburg,161 Ohio App.3d 559, 563, 831 N.E.2d 467, 2005-Ohio-2862, quotingOhio State Bd. of Pharmacy v. Frantz (1990), 51 Ohio St.3d 143,145-46, 555 N.E.2d 630. But estoppel may apply where a governmental entity made a representation, "which was within its power to make and which induced reliance." See City of Oxford v.Day (March 16, 1998), Butler App. No. CA96-09-183, citing PilotOil Corp. v. Ohio Department of Transportation (1995),102 Ohio App.3d 278, 283, 656 N.E.2d 1379. Nonetheless, "mistaken advice or opinions of a government agent do not give rise to a claim of promissory estoppel." Kadar v. Ohio Dept. of Public Safety,
Ohio Ct.Cl. No. 2004-06046, 2005-Ohio-5064, ¶ 22, citing Halluerv. Emigh (1992), 81 Ohio App.3d 312, 610 N.E.2d 1092.
 {¶ 12} The elements necessary to establish a claim for promissory estoppel are: (1) a promise clear and unambiguous in its terms; (2) reliance by the party to whom the promise is made; (3) the reliance must be reasonable and foreseeable; and (4) the party claiming estoppel must be injured by the reliance.Schepflin v. Sprint-United Telephone of Ohio (April 29, 1997), Richland App. No. 96-CA-62-2, citing Stull v. CombustionEngineering, Inc. (1991), 72 Ohio App.3d 553, 557.
 {¶ 13} We thus first turn to the "promise" element of the doctrine of promissory estoppel. A promise is defined as "* * * a manifestation of intention to act or refrain from acting in a specified way, so made as to justify a promisee in understanding that a commitment has been made." Stull, supra, at 557, quoting Restatement of the Law 2d, Contracts (1981) 8, Section 2(1). "`A promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise. * * *" Talley v. Teamsters, Chauffeurs, Warehousemen,and Helpers, Local No. 377 (1977), 48 Ohio St.2d 142, 146,357 N.E.2d 44, quoting Restatement of Contracts 2d (1973), Section 90.
 {¶ 14} In the case sub judice, GGJ proposes that the following evidence was sufficient to allow the case to go to the jury on the issue of promise:
 {¶ 15} Prior to entering into the written contract with the Port Authority, GGJ was consistently told by the County Commissioners that the Mines Resort Project was moving forward. (Tr. p. 73). GGJ was asked to attend the monthly meetings of the Port Authority, and at every meeting there was at least one County Commissioner present because, as GGJ co-owner Robert Jurs recalled, the Commissioners were serving in the function of a "backstop," such that the Commissioners were acting as the "guarantor in order to get to issuing bonds" (Tr. pp. 73-74); at most monthly meetings of the Port Authority during this time, the Commissioners indicated that they were "still on board" (Tr. p. 74). On one occasion in particular, GGJ's representative rode with two of the County Commissioners in a car while the building site was showcased to a financier, Bill Black. (Tr. p. 74). Jurs testified that: "There was a presentation after lunch, and the County Commissioners stated for us unequivocally that they were in favor of the project and we were moving forward expeditiously." (Tr. p. 75, 88). The County Commissioners issued a letter dated June 27, 2002 in which they stated "on behalf of the Tuscarawas County Commissioners" that it was "the county's intent to serve as `Guarantor' for the payment of annual debt service in conjunction with debt issued by the Tuscarawas County Port Authority relative to the above captioned project . . . . . This letter represents the County Commissioners intent to serve as Guarantor for the above captioned project. . . . Commissioner Seldenright is out of town but supports the contents of this letter." (Tr. pp. 75-76; Plaintiffs' Exhibit 1). Commissioner Jim Seldenright indicated in his trial testimony that although he did not sign the June 27, 2002 letter, he didn't have any problem with his name being attributed as being in agreement with it. (Tr. p. 128); Commissioner Seldenright testified that before issuing this letter, the Commissioners performed "due diligence" by meeting with legal counsel, meeting with the County Treasurer, and meeting with the County Auditor, all of whom "had no objections to the publication of that letter or the commissioners' guaranteeing of the bonds." (Tr. pp 140-141); Commissioner Seldenright admitted that the "[p]urpose of this letter was necessary to show that there was a commitment from Tuscarawas County to be the guarantor of the bonds . . ." (Tr. p. 138); Commissioner Seldenright also admitted that he fully understood that the recipient of the letter was to show it to various entities in an effort to "get this project on the road." (Tr. pp. 139-140). Commissioner Seldenright also testified that he was in fact in favor of the Mines Project originally, and that he expressed that fact "within earshot of Mr. Jurs." (Tr. p. 145).
 {¶ 16} However, a review of the record further reveals that Jurs admitted that the Commissioners never promised to pay for GGJ's services (Tr. at 108). Jurs also conceded that the issuance of the bonds was not guaranteed, that the letter of intent was subject to unmet conditions, and that the overall cost of the project had changed subsequent to the letter of intent. Tr. at 87, 99, 103-104. Furthermore, Seldenright testified he never promised to vote in favor of the resort project and never made any pronouncements on how he would vote. Tr. at 134-135.
 {¶ 17} Upon review of the record, we find reasonable minds would only conclude that the Commissioners did not clearly manifest an intention to act in any "specified way" as to payment for GGJ's services. Stull, supra. Therefore, we hold the trial court properly granted a directed verdict against GGJ for want of a "promise" for purposes of equitable estoppel.
 {¶ 18} The issues of reasonable reliance and injury are therefore rendered moot. Accordingly, GGJ's sole Assignment of Error is overruled.
 {¶ 19} For the reasons stated in the foregoing opinion, the judgment of the Court of Common Pleas, Tuscarawas County, Ohio, is hereby affirmed.
Wise, P.J. Farmer, J., concurs.
Hoffman, J., concurs separately.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas of Tuscarawas County, Ohio, is affirmed.
Costs to appellant.