JOURNAL ENTRY AND OPINION
{¶ 1} All Star Land Title Agency, Inc. ("All Star") appeals from the trial court's decision granting summary judgment in favor of Surewin Investment, Inc. ("Surewin"), Michael Boyer ("Boyer"), and Boston Title Escrow ("Boston Title"). All Star argues that genuine issues of material fact existed that precluded the grant of summary judgment. For the following reasons, we affirm the decision of the trial court.
 {¶ 2} This case arises out of a dispute between the members of Millennium Land Title Agency, LLC ("Millennium"), an Ohio limited liability company organized as a title agency. Millennium has two members, All Star and Surewin.
 {¶ 3} In 1999, Boyer formed Surewin as an Ohio for profit corporation and is its sole shareholder. In 2001, Surewin began providing real estate services under the name of Ohio State Realty and hired agents and staff. As a real estate company, Sherwin referred its customers to providers of title and escrow services.
 {¶ 4} In 1999, Jane Steed ("Steed") formed All Star, an Ohio corporation providing title and real estate closing services. Steed is the president and owner of All Star and manages its day-to-day operations. In June or July 2001, Steed approached Boyer and suggested that Surewin begin making some referrals to All Star for title services. Surewin complied.
 {¶ 5} Because Surewin did not receive any compensation for its referrals for real estate closing services, Surewin and All Star decided to enter into an affiliated business agreement. Under this arrangement, both Surewin and All Star could receive compensation in the form of a return on their ownership interests in a jointly owned title company. As a result, Surewin and All Star formed Millennium in December 2001 as a limited liability company. The operations of Millennium were governed by the operating agreement, which Steed's lawyer drafted, and, which All Star and Surewin executed. The operating agreement contains an integration clause stating the following:
"This agreement constitutes the complete and exclusive statement of the agreement among the Members. It supersedes all prior written and oral statements, including any prior representation, statement, condition, or warranty. Except as expressly provided otherwise herein, this Agreement may not be amended without the written consent of all of the Members."
 {¶ 6} The operating agreement also allows both Surewin and All Star to compete with each other and with Millennium. Section 5.4.2 specifically states the following:
"Except as otherwise provided in Section 5.4.3, nothing in this Agreement shall be deemed to restrict in any way the rights of any Member, or of any Affiliate of any Member, to conduct any other business or activity whatsoever, and the Member shall not be accountable to the Company or to any Member with respect to that business or activity even if the business or activity competes with the Company's business. The organization of the Company shall be without prejudice to their respective rights (or the rights of their respective Affiliates) to maintain, expand, or diversify such other interests and activities and to receive and enjoy profits or compensation therefrom. Each Member waives any rights the Member might otherwise have to share or participate in such other interests or activities of any other Member or the Member's Affiliates."
 {¶ 7} Although Surewin and All Star formed Millennium, the operating agreement provides that "No member shall be required to perform services for [Millennium]." According to its terms, the operating agreement would be effective until December 31, 2030, unless terminated sooner under the provisions of the agreement.
 {¶ 8} While Millennium existed, Surewin made referrals to Millennium but All Star did not. In December 2004, All Star formed a limited liability company with Ohio First Realty called Ohio First Land Title Agency, which is a competitor of Millennium and All Star.
 {¶ 9} Boyer began to have concerns about the management and quality of performance of Millennium. After his concerns were not met, Boyer formed Boston Title with one other person. On January 27, 2005, Boyer left a message with Steed indicating Surewin's desire to dissolve Millennium. On February 2, 2005, Boyer sent an email to Steed again indicating Surewin's desire to dissolve Millennium. Steed replied on February 3, 2005, indicating that she "agree[d] it would be in everyone's best interest to wrap up the affairs of Millennium as quickly as possible." Because of this exchange, Millennium ceased its operations. Millennium's manager, Bonnie McDaniel, who was a longtime employee of Steed's, left to work for Boston Title. The remainder of Millennium's employees were either terminated, went to work for Boston Title, or returned to All Star.
 {¶ 10} On February 25, 2005, All Star filed a complaint in the Cuyahoga County Court of Common Pleas against Surewin and its sole shareholder, Boyer, CV 05-555892. All Star alleged that Surewin and Boyer breached Millennium's operating agreement, breached fiduciary duties owed to Millennium, and tortiously interfered with oral employment agreements between All Star and Millennium's employees.
 {¶ 11} Surewin and Boyer answered All Star's complaint and Surewin asserted counterclaims for the dissolution of Millennium and disbursement of money owed for the first quarter of 2005. On July 28, 2005, All Star amended its complaint to add Boston Title. On September 1, 2005, All Star received leave to amend its complaint, which added a claim for promissory estoppel against all defendants.
 {¶ 12} On September 7, 2005, the three defendants filed a joint motion for summary judgment, and All Star filed a brief in opposition. On October 31, 2005, the trial court granted the defendants' motion for summary judgment. The trial court found that after construing the evidence in the light most favorable to All Star, "[t]here was no breach of contract on behalf of Defendant." Additionally, the court found that (1) Millennium was dissolved because "defendant requested to dissolve Millennium and plaintiff consented," (2) that the operating agreement specifically allowed Surewin and All Star to compete against each other and Millennium because "there is a clause allowing the parties involved to do work that could compete with Millennium," (3) that "Defendant did not tortiously interfere" with All Star's contractual relationship, that (4) plaintiff did not show a "clear and unambiguous promise meeting the first prong of the test for promissory estoppel," and (5) that any reliance by All Star on business referral promises made by Surewin was "unreasonable" as a matter of law.
 {¶ 13} On November 14, 2005, All Star filed an appeal, which this court dismissed for All Star's failure to file the record. On December 30, 2005, All Star paid Surewin the amount due for unpaid disbursements and Surewin dismissed its counterclaim against All Star without prejudice.
 {¶ 14} On January 4, 2006, All Star filed this instant appeal, raising the four assignments of error contained in the appendix to this opinion.
 {¶ 15} We review an appeal from summary judgment under a de novo standard of review. Baiko v. Mays (2000),140 Ohio App.3d 1, citing Smiddy v. The Wedding Party, Inc. (1987),30 Ohio St.3d 35. Accordingly, we afford no deference to the trial court's decision and independently review the record to determine whether summary judgment is appropriate. Northeast Ohio Apt.Assn. v. Cuyahoga Cty. Bd. of Commrs. (1997), 121 Ohio App.3d 188, citing Brown v. Scioto Bd. of Commrs. (1993),87 Ohio App.3d 704. Under Civ.R. 56, summary judgment is appropriate when: (1) no genuine issue as to any material fact exists, (2) the party moving for summary judgment is entitled to judgment as a matter of law, and (3) viewing the evidence most strongly in favor of the nonmoving party, reasonable minds can reach only one conclusion and that conclusion is adverse to the nonmoving party.Temple v. Wean United, Inc. (1997), 50 Ohio St.2d 317, 327.
 {¶ 16} The moving party carries an initial burden of setting forth specific facts that demonstrate his or her entitlement to summary judgment. Dresher v. Burt, 75 Ohio St.3d 280, 292-293,1996-Ohio-107. If the movant fails to meet this burden, summary judgment is not appropriate; if the movant does meet this burden, summary judgment will be appropriate only if the nonmovant fails to establish the existence of a genuine issue of material fact. Id. at 293.
 {¶ 17} In its first assignment of error, All Star argues that the trial court erred when it granted summary judgment in favor of the defendants on its claim for breach of contract. In this assigned error, All Star alleges that the defendants breached their agreements with All Star in two ways: (1) when Surewin withdrew from Millennium without All Star's consent, and (2) when Surewin and Boyer stopped referring Ohio State Realty's business to Millennium as was required by the parties' oral agreement.[1] We will address these two arguments separately.
All Star's Claim of Breach of Contract Against Surewin
 {¶ 18} In this claim, All Star alleges that Surewin breached the terms of the operating agreement when it withdrew from Millennium. We disagree.
 {¶ 19} The elements of a breach of contract claim are summarized as follows:
"A breach of contract occurs when a party demonstrates the existence of a binding contract or agreement; the nonbreaching party performed its contractual obligations; the other party failed to fulfill its contractual obligations without legal excuse; and the nonbreaching party suffered damages as a result of the breach."
Phillips v. Spitzer Chevrolet Company, et al., Stark App. No. CA00002, 2006-Ohio-4701.
 {¶ 20} In the present case, Surewin has demonstrated that no genuine issue of material fact remains to be litigated on this claim because All Star cannot establish that Surewin breached the operating agreement. The Ohio Supreme Court has held that "[i]f a contract is clear and unambiguous, then its interpretation is a matter of law and there is no issue of fact to be determined."Davis v. Loopco Industries, Inc. (1993), 66 Ohio St.3d 64, quoting Alexander v. Buckeye Pipe Line Co. (1978),53 Ohio St.2d 241. However, if a term cannot be determined from the four corners of a contract, "factual determination of intent or reasonableness may be necessary to supply the missing term."Davis, supra.
 {¶ 21} The operating agreement provides:
"7.1. Events of Dissolution. The Company shall be dissolved upon the happening of any of the following events.
* * *
7.1.2. upon the unanimous written agreement of the Members."
 {¶ 22} From the four corners of the operating agreement, we can conclude that if the Members to the agreement unanimously agreed in writing to dissolve the company, Millennium would be dissolved at that time. The trial court specifically determined that this event occurred and we cannot disagree with that conclusion.
 {¶ 23} On February 2, 2005, Boyer emailed Steed with a list of reasons for his dissatisfaction with Millennium and concluded the email by requesting that they dissolve the company. Steed returned Boyer's email on February 3, 2005, and agreed to the dissolution of Millennium by stating, "I agree it would be in everyone's best interest to wrap up the affairs of Millennium as quickly and efficiently as possible." Viewing these facts in the light most favorable to All Star, we have no choice but to conclude that Millennium was dissolved in accordance with section 7.1.2 of the operating agreement.
 {¶ 24} All Star argues that it only agreed to dissolve Millennium after Surewin and Boyer stopped referring Ohio State Realty's business to Millennium. This argument has no bearing on the issue at hand. The operating agreement contains no provision requiring Surewin to refer its business to Millennium. This alleged arrangement was an oral agreement between Surewin and All Star created after the signing of the operating agreement. Moreover, the terms of the operating agreement are clear. Pursuant to section 7.1.2 of the agreement, Millennium can be dissolved with the unanimous written agreement of the Members. Millennium contained only two members, Surewin and All Star, who both agreed in writing, through email correspondence, to dissolve Millennium. If All Star and Steed did not want to dissolve Millennium, she should not have agreed to do so in writing.
 {¶ 25} Because the terms of the operating agreement are clear and unambiguous, we find that Surewin and All Star agreed to dissolve Millennium. As such, we overrule All Star's claim that Surewin breached the operating agreement when it withdrew from Millennium.
All Star's Claim that Surewin and Boyer Breached the OralAgreement.
 {¶ 26} In this argument, All Star alleges that All Star and Surewin entered into an oral agreement in December 2001, whereby Surewin would refer all of Ohio State Realty's customers to Millennium in exchange for All Star providing the staffing and resources necessary to handle all of the work referred by Surewin.
 {¶ 27} Viewing the evidence in the light most favorable to All Star, we conclude that no genuine issue of material fact remains to be litigated. This type of oral contract cannot be enforced because it violates the statute of frauds. R.C. 1335.05.
 {¶ 28} As relevant here, R.C. 1333.05 provides the following:
"[N]o action shall be brought whereby to charge the defendant * * * upon an agreement that is not to be performed within one year from the making thereof; unless the agreement * * * is in writing and signed by the party to be charged * * *."
 {¶ 29} The Ohio Supreme Court analyzed the statute of frauds and found the following:
"For over a century, the `not to be performed within one year' provision of the Statute of Frauds, in Ohio and elsewhere, has been given a literal and narrow construction. The provision applies only to agreements which, by their terms, cannot be fully performed within a year; and not to agreements which may possibly be performed within a year, thus, where the time for performance under an agreement is indefinite, or is dependent upon a contingency which may or may not happen within a year, the agreement does not fall within the statute of frauds." (Citations omitted).
Sherman v. Haines (1995), 73 Ohio St.3d 125, 1995-Ohio-222.
 {¶ 30} All Star argues that the oral agreement in this case could possibly be performed within one year. All Star claims that Surewin could close its business, either through retirement or other means and, therefore, would not have to continue referring Ohio State Realty's clients to Millennium. This argument is without merit.
 {¶ 31} The oral agreement in this case required Surewin to refer all of Ohio State Realty's clients to Millennium. All Star and Surewin signed an operating agreement that they would operate Millennium until 2030 unless terminated sooner by the provisions of the agreement. Though All Star argues that this oral agreement was separate and distinct from the operating agreement of Millennium, it is clear that this agreement was to last thirty years. Additionally, the oral agreement was not dependent upon the contingency that if Surewin closed its business within one year, the oral agreement becomes null and void. This court can reach only one conclusion: this oral agreement could not possibly be performed within one year. Having been entirely oral, this agreement violated R.C. 1335.05 and is unenforceable.
 {¶ 32} In response, All Star claims that even if the oral agreement is barred by the statute of frauds, the doctrine of part performance removes the agreement from the statute. However, the Ohio Supreme Court has held that the doctrine of part performance applies in cases of sale or leasing of real estate, not to contracts of personal service. Hodges v. Ettinger, etal. (1934), 127 Ohio St.460; Farmer v. Meigs Ctr. (March 30, 1998), Meigs App. No. 96 CA 02; ID Agency v. Community Mut. Ins.Co. (July 14, 1994), Cuyahoga App. No. 65298.
 {¶ 33} Therefore, the trial court was correct in granting summary judgment in favor of Surewin and Boyer on All Star's claim of breach of an oral agreement.
 {¶ 34} All Star's first assignment of error is overruled.
 {¶ 35} In its second assignment of error, All Star argues that the trial court erred in granting summary judgment in favor of defendants on its claim of breach of fiduciary duties. In this assigned error, All Star alleges that Surewin and Boyer breached their fiduciary duties in two ways: (1) when they stopped referring clients to Millennium, and (2) by hiring All Star's employees.[2] These two arguments will be addressed separately.
All Star's claim that Surewin and Boyer breached theirfiduciary duties when they stopped referring clients toMillennium.
 {¶ 36} A fiduciary has been defined as a person having a duty, created by his or her undertaking, to act primarily for the benefit of another in matters connected with such undertaking.Stock v. Pressnell (1988), 38 Ohio St.3d 207. A claim of breach of fiduciary duty is basically a claim for negligence that involves a higher standard of care. Id. In order to recover, one must show the existence of a duty on the part of the alleged wrongdoer not to subject such person to the injury complained of, a failure to observe such duty, and an injury proximately resulting therefrom. Id.
 {¶ 37} In the present case, a limited liability company is involved, which involves a fiduciary relationship. Normally, the presence of such a relationship would prevent direct competition between members of the company. However, here we have an operating agreement which, by its very terms, allows members to compete with the business of the company.
 {¶ 38} Here, the injury complained of by All Star was that Surewin and Boyer competed with Millennium by referring Ohio State Realty's clients to Boston Title, a company owned in part by Boyer. However, the Millennium operating agreement constitutes the undertaking of both All Star and Surewin. In becoming members of Millennium, All Star and Surewin agreed to abide by the terms of the operating agreement, and that agreement specifically allowed competition with the company and its members. Section 5.4.2 of the Millennium operating agreement. As such, the duties created pursuant to such undertaking did not include a duty not to compete. Therefore, there was no duty on the part of Surewin or Boyer to refrain from competing with Millennium and All Star. Additionally, as stated above, we found that the oral agreement requiring Surewin to refer clients to Millennium was unenforceable because it violated the statute of frauds.
 {¶ 39} Therefore, because there was no duty on the part of Surewin and Boyer not to compete, they cannot be charged with a breach of fiduciary duty based upon their competitive actions. All Star's claim that Surewin and Boyer breached their fiduciary duties when they stopped referring clients to Millennium is without merit. All Star's claim that Surewin and Boyer breachedtheir fiduciary duties by hiring two of All Star's employees.
 {¶ 40} In putting forth this argument, All Star fails to cite to any authority for this claim. An appellate court may disregard an assignment of error pursuant to App.R. 12(A)(2) if an appellant fails to cite to any legal authority in support of an argument as is required by App.R. 16(A)(7). State v. Martin
(July 12, 1999), Warren App. No. CA99-01-003; citing Meerhoff v.Huntington Mortgage Co. (1995), 103 Ohio App.3d 164, 169;Siemientkowski v. State Farm Insurance, Cuyahoga App. No. 85323, 2005-Ohio-4295. "If an argument exists that can support this assignment of error, it is not this court's duty to root it out." Cardone v. Cardone (May 6, 1998), Summit App. Nos. 18349 and 18673.
 {¶ 41} All Star failed to cite to any legal authority in support of his argument, a failure that allows this court to disregard the argument. App.R. 12(A)(2); App.R. 16(A)(7).
 {¶ 42} All Star's second assignment of error is overruled.
 {¶ 43} In its third assignment of error, All Star argues that the trial court erred when it granted summary judgment in favor of defendants on its claim of tortious interference with contract and business relations. In this assigned error, All Star limits its claims to Boyer and Boston Title.[3]
 {¶ 44} We note that in its complaint, and in its brief in opposition to defendants' motion for summary judgment, All Star alleged that the defendants tortiously interfered with contract and business relations by hiring two of All Star's employees at Boston Title. However, in its appellate brief, All Star admits that its employees were at will employees. As such, any action by a defendant to hire any All Star employee cannot constitute tortious interference with contract or business relationship.Fred Siegel Co., L.P.A. v. Arter Hadden (1999),85 Ohio St.3d 171; Emergency Preemption Inc. v. Emergency Preemption Systems,Inc. (Aug. 14, 1997), Cuyahoga App. No. 71350.
 {¶ 45} On appeal, All Star changed its argument regarding this assignment of error by claiming that Boyer and Boston Title tortiously interfered with contract and business relations when they referred Ohio State Realty's customers to Boston Title in violation of Surewin and All Star's oral business referral agreement. We disagree.
 {¶ 46} Even if we were to conclude that Boyer and Boston Title interfered, we previously found that the oral agreement requiring Surewin and Boyer to refer all Ohio State Realty's customers to Millennium was unenforceable because it violated the statute of frauds. As such, neither Boyer nor Boston Title can be said to have committed tortious interference with contract and business relations by interfering with an unenforceable agreement.
 {¶ 47} All Star's third assignment of error is overruled.
 {¶ 48} In its fourth and final assignment of error, All Star argues that the trial court erred in granting summary judgment in favor of defendants on its claim of promissory estoppel. In this assigned error, All Star limits its claim of promissory estoppel to Surewin and Boyer.[4]
 {¶ 49} "Promissory estoppel is an equitable doctrine for preventing the harm resulting from reasonable reliance upon false representations." GGJ, Inc. v. Tuscarawas Cty. Bd. of Commrs.,
Tuscarawas App. No. 07 0047, 2006-Ohio-2527. The elements necessary to establish a claim for promissory estoppel are: (1) a clear and unambiguous promise; (2) reliance by the party to whom the promise is made; (3) the reliance must be reasonable and foreseeable; and (4) the party claiming estoppel must be injured by the reliance. Id.
 {¶ 50} When granting summary judgment in favor of the defendants on this claim, the trial court determined that Surewin and All Star did not reach a clear and unambiguous promise. Viewing the evidence in the light most favorable to All Star, we agree with the trial court's conclusion.
 {¶ 51} The Millennium operating agreement states that no member shall be required to perform services for Millennium. Section 5.3. The operating agreement also states that no member shall be prohibited from conducting any other business, even if the business competes with Millennium or other members. Section 5.4.2. What is conspicuously absent from the operating agreement is any mention of Surewin's agreement to refer all Ohio State Realty's clients to Millennium. As stated above, we have found that this oral agreement, which cannot be completed within one year, violates the statute of frauds and is unenforceable. After reviewing the record, we cannot find evidence of a clear and unambiguous promise. Without a clear and unambiguous promise to rely on, a claim for promissory estoppel fails as a matter of law. Bohach v. Advery, Mahoning App. No. 00 CA 265, 2002-Ohio-3202.
 {¶ 52} Even if such promise is established, any reliance on the part of All Star is unreasonable. After reviewing this operating agreement, we cannot conclude that All Star reasonably believed that Surewin and Boyer would refer all of Ohio State Realty's clients to Millennium for the lifetime of their agreement, especially after reviewing the provisions in the operating agreement that specifically allow competition and that specifically do not require any member to perform services for Millennium. Section 5.3; Section 5.4.2.
 {¶ 53} Accordingly, we find that All Star's claim for promissory estoppel must fail as a matter of law.
 {¶ 54} All Star's fourth and final assignment of error is overruled.
 {¶ 55} Because we have found that there are no genuine issues of material fact that remain to be litigated, All Star's claims against Surewin, Boyer, and Boston Title must fail as a matter of law.
 {¶ 56} The judgment of the trial court is affirmed.
It is ordered that appellee recover from appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate be sent to said court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Dyke, A.J., and Calabrese Jr., J., concur.
 APPENDIX Assignments of Error: "I. The Trial Court erred in granting summary judgment infavor of the Defendants-Appellees on the Plaintiff-Appellant'sclaim for breach of contract because there are genuine issues ofmaterial fact in dispute.
 II. The Trial Court erred in granting summary judgment infavor of the Defendants-Appellees on the Plaintiff-Appellant'sclaim for breach of fiduciary duties because there are genuineissues of material fact in dispute.
 III. The Trial Court erred in granting summary judgment infavor of the Defendants-Appellees on the Plaintiff-Appellant'sclaim for tortious interference with contract and businessrelations because there are genuine issues of material fact indispute.
 IV. The Trial Court erred in granting summary judgment infavor of the Defendants-Appellees on the Plaintiff-Appellant'sclaim for promissory estoppel because there are genuine issues ofmaterial fact in dispute."
[1] All Star alleges that only Surewin breached the operating agreement. All Star acknowledges that Boyer and Boston Title were not parties to the operating agreement and, thus, could not and did not breach the operating agreement. All Star also alleges that only Surewin and Boyer breached the oral agreement and concedes that because Boston Title was not a party to the oral agreement, it could not, and did not breach the oral agreement.
[2] All Star admits that Boston Title was not a party to the operating agreement, oral agreement, nor was it a shareholder in the closely held corporation of Millennium. All Star thus concedes that Boston Title owed no fiduciary duties and did not breach any fiduciary duties.
[3] All Star concedes that Surwin did not tortiously interfere with the business relations or contract of All Star because "it was Surewin along with All Star, that were parties to the business relationship and contracts to which Michael Boyer and Boston Title Escrow, LLC interfered."
[4] All Star concedes that Boston Title made no promises to All Star and therefore, it is not liable on All Star's claim of promissory estoppel.